986 So.2d 863 (2008)
STATE of Louisiana, Appellee
v.
Kendrick Darney HALL, Appellant.
No. 43,125-KA.
Court of Appeal of Louisiana, Second Circuit.
June 4, 2008.
*865 Louisiana Appellate Project, by G. Paul Marx, Lafayette, for Appellant.
Paul J. Carmouche, District Attorney, Geya D. Williams-Prudhomme, John Ford *866 McWilliams, Jr., Assistant District Attorneys, for Appellee.
Before BROWN, DREW and MOORE, JJ.
MOORE, J.
Kendrick Darney Hall was charged with armed robbery with a firearm, La. R.S. 14:64 and 64.3 ("Count 1"), and first degree robbery, R.S. 14:64.1 ("Count 2"), arising from separate incidents involving the same victim. After a 12-member jury found him guilty as charged on both counts, the state charged him as a fourth felony offender on Count 1. Finding him guilty as charged, the district court sentenced him to 99 years at hard labor without benefits as a fourth felony offender on Count 1 and to a concurrent 40 years at hard labor without benefits on Count 2. Hall now appeals, raising four assignments of error. We affirm.

Factual Background
The victim in both incidents was Doris Bowman, who lived with her elderly mother on Washington Street in Shreveport's Highland area. On the night before Thanksgiving 2004, a man knocked on Ms. Bowman's front door, saying it was "the police." She looked out the peephole and, seeing a man in a black jacket, opened the door. The man told her he was looking for Eric; Ms. Bowman replied that an Eric might live two doors down. She quickly shut the door but watched, through the peephole, the man she now considered "erratic and funny." She described him as a young black man, about 5'7" or 5'8" in height and weighing about 170 lbs., wearing a black jacket, red plaid shirt and jeans, but did not call the police.
The next morning, Thanksgiving Day, Ms. Bowman opened her front door to let out the dog, and saw the same man sitting in the corner on one of her porch chairs. She asked him what he was doing there; he replied he was "beat up" and waiting on his brother, and asked to use her phone. When she refused, he pulled out a gun, held it to her head and said, "I ought to kill you." He pushed his way past her, through the open front door, and into her mother's bedroom, where the mother was asleep. He grabbed the mother's purse and ran back out through the front door. Ms. Bowman was already phoning 911. She testified that she got a good look at the assailant, who was in the same clothes as the night before. She was positive it was the same person.
About a month later, Detective James Cromer of the Shreveport Police Department assembled a photo lineup of six black-and-white photos of young black males resembling Ms. Bowman's description; she could not pick her assailant out of this lineup. Two weeks later, Det. Cromer prepared a second lineup, from which Ms. Bowman again could not pick her assailant. Neither of these lineups included Hall's photo. Cromer advised her that with no leads, he would list the investigation as suspended.
Over a month later, on the morning of February 23, 2005, Ms. Bowman stepped out the front door to go to work when a person came up from the corner of the porch and said, "Give me your purse or I'll shoot you." She did not actually see a gun, but handed him her purse anyway and got a good look at him: she was certain it was the same person who had robbed her in November. She immediately called the police and reported that the suspect had run west on Washington Street. Corporal John Schelmz testified that she gave no other description than that it was the same person as before. He was unable to locate any witnesses that day.
*867 The next day, police received a report of suspicious activity in an abandoned house at 327 Wilkinson Street, one block north of Ms. Bowman. Corporal Schelmz recalled seeing that house the previous day with its blinds up, but now they were down; he went to the back of the house and found the door wide open. Officers entered the back door and immediately discovered, among other items, a purse which they recognized as stolen from Ms. Bowman. A check with Department of Water and Sewerage showed that a Kendrick Hall had paid the last water bill at 327 Wilkinson.
With this information, Det. Cromer prepared another photo lineup, including Hall's photo with those of five other young black males; once again, Ms. Bowman could not pick out her assailant. Concerned that Hall's photo might be outdated, Cromer pulled Hall's latest driver's license photo and noticed that he now looked substantially different. Cromer therefore assembled a fourth lineup using the driver's license image and five other photos, all in a larger format than before. On March 8, Ms. Bowman immediately and positively picked Hall as picture #5 from this lineup. She testified she was "100% certain" that he was the man who robbed her both times.
Police also interviewed Chiniqua Martin, a teen whose family lived five or six houses down from 327 Wilkinson Street. She testified that Hall and his family had lived there but moved out prior to February 2005, and yet she saw him "going in and out of the house on several occasions after the family moved out." She added that she had seen nobody else entering the abandoned house. She positively identified Hall as picture # 5 in the large-format photo lineup, and identified him in court as the person she had seen entering 327 Wilkinson Street after the family moved out.
During a custodial interrogation on March 9, 2005, Hall waived his Miranda rights and admitted that his family previously lived at 327 Wilkinson Street, but insisted they had moved out months before and he never went back. He denied ever robbing Ms. Bowman.
As noted, the state charged Hall with Count 1, armed robbery with a firearm, for the incident of November 24, 2004, and Count 2, first degree robbery, for the incident of February 23, 2005. After a five-day trial, the 12-member jury found him guilty as charged on both counts.[1] He was later adjudicated a fourth felony offender on Count 1. The district court sentenced him, after reconsideration,[2] to 99 years at hard labor without benefit of parole, probation or suspension of sentence as a fourth felony offender on Count 1, and to a concurrent 40 years at hard labor without benefits on Count 2. The instant appeal followed.

Discussion: Sufficiency of the Evidence
By his first assignment of error, Hall urges the verdict was based on insufficient evidence, including unreliable eyewitness identification, alibi evidence proving innocence, suggestive lineups and lack of corroborating evidence. In fact, the state failed to prove any armed robbery occurred on November 25, as nothing was taken from the victim, Ms. Bowman, or from her immediate control, as required by La. R.S. 14:64 A. He concedes that the *868 concept of "immediate control" has been expansively interpreted, but contends that the purse in the mother's bedroom was not sufficiently under the victim's control, on the front porch, that "absent violence or intimidation, the victim could have prevented the taking." State v. Thomas, 447 So.2d 1053 (La.1984); State v. Long, 36,167 (La.App. 2 Cir. 10/30/02), 830 So.2d 552. Even if a robbery occurred, Hall contends that Ms. Bowman gave police physical descriptions of her assailant that were inconsistent and inaccurate, failed to notice distinctive tattoos on his right hand, and did not identify him in open court. Further, the lineup procedure was unduly suggestive because Hall's photo appeared in the third and fourth lineups; Ms. Bowman "certainly could have misidentified him because of his repeated appearances." Finally, the jury had no reason to disregard the testimony of Hall's mother, Mary Hall, who testified he was at home with her at the time of both robberies, and said he did not even own a black jacket, and of his sister, Caprice Hall, who specifically recalled he was at home on Thanksgiving Day 2004.
The standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517. The trier of fact is charged to make a credibility evaluation and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Sosa, XXXX-XXXX (La.1/19/06), 921 So.2d 94.
When the defendant claims he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry the burden of proof. State v. Neal, XXXX-XXXX (La.6/29/01), 796 So.2d 649, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Lee, 38,114 (La.App. 2 Cir. 3/3/04), 868 So.2d 256, writ denied, XXXX-XXXX (La.10/8/04), 883 So.2d 1027. Positive identification by only one witness is sufficient to support a conviction. State v. Hughes, XXXX-XXXX (La.11/29/06), 943 So.2d 1047; State v. Birch, 41,979 (La.App. 2 Cir. 5/9/07), 956 So.2d 793.
Armed robbery is "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. R.S. 14:64 A; State v. Draughn, XXXX-XXXX (La.1/17/07), 950 So.2d 583, cert. denied, ___ U.S. ___, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). Armed robbery with a firearm, La. R.S. 14:64.3, is a more serious form of armed robbery for which the penalty range is effectively 15 to 104 years. State v. Ellis, 42,520 (La.App. 2 Cir. 9/26/07), 966 So.2d 139, writ denied, 2007-2190 (La.4/4/08), 978 So.2d 325.
Hall's first argument, that the state failed to prove that any robbery occurred in Count 1, is utterly without merit. As noted in the Reporter's Comments to R.S. 14:64 (with emphasis added):
The words "taking from the person * * * of another" as used in connection *869 with the common law definition of robbery are not restricted in application to those cases in which the property taken is in actual contact with the person from whom it is taken, but, if the property is away from the owner, yet under his control, for instance in another room of the house, it is nevertheless in his possession, and if he is deprived thereof, it may well be said it is taken from his possession. See State v. Verret, 174 La. 1059, 142 So. 688 (1932).
Courts have recognized that felonious taking, more than the perfect title of the victim, forms the essence of the jury question. State v. Refuge, 300 So.2d 489 (La. 1974); State v. Perry, 612 So.2d 986 (La. App. 2 Cir.1993). The victim's greater possessory interest in the property stolen, vis-à-vis the accused, is the key issue. State v. Perry, supra. Ms. Bowman had a far greater right than Hall to possess or control her mother's purse, which was kept in her mother's bedroom. We also note that in State v. Thomas and State v. Long, cited by Hall, the courts affirmed findings of armed robbery even though the victim was outside the truck or in a different room when the taking occurred. The instant record supports every essential element of the crime of armed robbery with a firearm.
As for Ms. Bowman's failure to identify Hall in the first three photo lineups, we note that Hall filed no motion to suppress the identification. However, cases involving the admissibility of a pretrial identification, such as Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), provide a useful template for assessing the defendant's claim of insufficiency arising from a misidentification. State v. Davis, 27,961 (La.App. 2 Cir. 4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12. The factors are (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the victim's prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. Id. The fact that the suspect's photo appeared in two lineups does not make the lineup procedure unduly suggestive. State v. Higgins, 01-368 (La.App. 5 Cir. 10/17/01), 800 So.2d 918, writ denied, XXXX-XXXX (La.11/1/02), 828 So.2d 565, cert. denied, 538 U.S. 1038, 123 S.Ct. 2082, 155 L.Ed.2d 1070 (2003).
Applying these factors, we find nothing inherently unreliable about Ms. Bowman's identification of Hall. His picture was included in both photo lineups prepared after Count 2 occurred, but the image in the third lineup (Exhibit S-6), an older photo, showed him with a thicker neck and face than the recent photo in the fourth lineup (Exhibit S-3). A rational juror could easily conclude that the later photo reflected Hall's physical appearance in November 2004 and February 2005, which Ms. Bowman might more easily recognize. The overriding factor is that Ms. Bowman got a good look at her assailant and finally, on March 8, made a "100% positive" identification. The jury was entitled to accept this.[3]
*870 Admittedly, Ms. Bowman gave slightly inconsistent physical descriptions: she testified that her assailant was 5'7" or 5'8" and weighed 170 lbs.; she initially told Corporal Vines that he was 6'; Det. Cromer testified that he was actually 5'7" and weighed 150 lbs. However, given that Ms. Bowman is a shorter woman (she testified she was 5'2"), her inability to gauge Hall's exact height seems understandable. She also failed to notice distinctive tattoos on Hall's right hand, but Det. Cromer testified that during the custodial interrogation, he also did not notice the tattoos. These minor issues in Ms. Bowman's testimony come nowhere near undermining the reliability of her identification.
Finally, as for the alibi evidence, this included testimony from Hall's mother, who testified that Hall was at home all day on November 25 and February 23; that he did not work; that he was a "momma child" and never out of her sight. Hall's sister also testified that Hall was home on both dates; that he was working at a nightclub, contrary to his mother's assertion that he never left the house; and that she had prior convictions for resisting an officer and theft of goods.
As noted, the trier of fact is charged to determine credibility and may, within the bounds of rationality, accept or reject the testimony of any witness. State v. Sosa, supra. Positive identification by only one witness is sufficient to support a conviction. State v. Hughes, supra. In light of Ms. Bowman's positive identification and the testimony of the disinterested witness who saw Hall going into an abandoned house where the stolen purse was found, the jury did not abuse its discretion in disregarding the alibi testimony. This assignment of error lacks merit.

Dismissal of Jury Venire
By his fourth assignment of error, Hall urges the district court erred in refusing to excuse a panel of prospective jurors. He contends that one panel member, Loretta Reynolds, openly stated that the defendant "scared" her, thus tainting the entire panel. He concedes that both the state and defense challenged Ms. Reynolds for cause, and the court excused her, but contends that her remarks were highly prejudicial and prevented him from receiving a fair trial. In support, he cites dicta in State v. Nevers, 91-1890 (La.App. 1 Cir. 1/20/93), 621 So.2d 1108, writ denied, 93-0491 (La.5/7/93), 617 So.2d 906, and State v. Rubbicco, 550 So.2d 219 (La.App. 4 Cir.1989), writ denied, 556 So.2d 1258 (La.1990).
The state responds that the juror's remarks resulted in no prejudice; that she clearly did not wish to participate in the process and was properly excused; and Hall waived his objection by failing to request further voir dire to determine whether the other prospective jurors were affected.
A petit jury venire "shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race." La. C. Cr. P. art. 419 A; State v. Carmouche, XXXX-XXXX (La.5/14/02), 872 So.2d 1020. The defendant bears the burden of proving the grounds for setting aside the venire. State v. Carmouche, supra. A defendant's motion for mistrial shall be ordered "when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial." La. C. Cr. P. art. 775. The prejudicial conduct may include *871 the remarks of venire members during voir dire. State v. Carmouche, supra. However, mistrial is a drastic remedy that is warranted only when the defendant has received substantial prejudice such that he cannot receive a fair trial. Id. A court need not order a new trial absent a showing that the prospective juror's comments affected other jurors and prejudiced the defendant. Id. The decision to dismiss the venire rests within the trial court's discretion. Id.; State v. Weary, XXXX-XXXX (La.4/24/06), 931 So.2d 297, cert. denied, ___ U.S. ___, 127 S.Ct. 682, 166 L.Ed.2d 531 (2006). Ordinarily, proof of prejudice consists of further examination of the other venire members. State v. Weary, supra; State v. Scroggins, 40,746 (La.App. 2 Cir. 3/22/06), 926 So.2d 64, writ denied, XXXX-XXXX (La.11/3/06), 940 So.2d 655. An admonition to the other venire members may also cure any potential prejudice. State v. Price, 40,408 (La.App. 2 Cir. 12/16/05), 917 So.2d 1201, writ denied, XXXX-XXXX (La.6/10/06), 929 So.2d 1284.
In front of 11 other venire members and in response to a question by defense counsel, Ms. Reynolds stated, "Just be looking at him, I will be biased. * * * I promise, he scare [sic] me just by looking at him." Both the state and defense challenged Ms. Reynolds (and one other juror) for cause; the district court excused them. When the court asked for peremptory challenges, defense counsel moved to strike the entire panel because the jurors were tainted by Ms. Reynolds's remark. The court offered to conduct individual voir dire of several jurors to see if they were affected, but defense counsel replied, "There's nothing the court can do to undo that [the prejudice]." The court orally denied the motion, stating there was nothing in the record to show that the remaining jurors were tainted.
Hall's argument is nothing more than a conclusory assertion that Ms. Reynolds's remarks tainted the venire. He expressly declined further voir dire, a procedure normally used to show prejudice in this situation. State v. Weary, supra; State v. Scroggins, supra; State v. Rubbicco, supra. He also did not request an admonition, an additional curative procedure. State v. Price, supra. Notably, Ms. Reynolds voiced no opinion as to Hall's guilt or innocence and apparently did not attempt to influence the other jurors. A fair reading of the voir dire is that Ms. Reynolds was simply trying to get out of jury service, an attitude which may well have influenced the other jurors to pay her absolutely no mind. On this record we cannot state that the court erred in refusing to dismiss the venire. This assignment lacks merit.

Motion for Mistrial
By his third assignment of error, Hall urges the district court erred in denying his motion for mistrial, or in failing to admonish the jury, when the prosecutor said in opening statement that Hall was "in jail" and referred to a statement of Hall's that had not yet been ruled admissible. He contends that the first was an impermissible reference to another crime committed or alleged to have been committed by the defendant, warranting a mandatory mistrial under La. C. Cr. P. art. 770(2), and the second was an improper reference to a confession or inculpatory statement before it had been ruled admissible, in violation of La. C. Cr. P. art. 767. He concedes that the court cautioned the state to make no further reference to inappropriate matters, but the prejudice was so great that only a mistrial would cure it. In support he cites State v. Williams, 26,655 (La.App. 2 Cir. 3/1/95), 651 So.2d 331, writ denied, 95-0777 (La.9/15/95), 660 So.2d 448.
*872 The state responds that it never said why Hall was "in jail"; a rational juror could have inferred it was for the instant offense rather than some other. Further, the prosecutor stated that police officers used an "older picture" to prepare the first three photo lineups, a phrase that neither directly nor indirectly referred to any other crime. Moreover, the statement to which the prosecutor referred was neither a confession nor inculpatory, but an exculpatory statement which, at any rate, was found to be admissible. Finally, even if a violation of Art. 770(2), occurred, it is subject to harmless error analysis. State v. Gatti, 39,833 (La.App. 2 Cir. 10/13/05), 914 So.2d 74, writ denied, 2005-2394 (La.4/17/06), 926 So.2d 511.
Upon motion of a defendant, a mistrial shall be granted when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during trial or in argument, refers directly or indirectly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. La. C. Cr. P. art. 770(2). Mistrial is warranted under Art. 770 when certain remarks are considered so prejudicial and potentially damaging to a defendant's rights that even jury admonition could not provide a cure. State v. Edwards, 97-1797 (La.7/2/99), 750 So.2d 893, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). Comments must be viewed in context; to trigger mandatory mistrial under Art. 770(2), the comment cannot "arguably" point to a prior crime, but must "unmistakably" do so. State v. Edwards, supra. References to a "mug shot," "criminal history file" or "rap sheet" have been held not to mandate mistrial. State v. Babin, 336 So.2d 780 (La.1976); State v. Gay, 29,434 (La.App. 2 Cir. 6/18/97), 697 So.2d 642; State v. Bonnee, XXXX-XXXX (La.App. 4 Cir. 8/28/02), 826 So.2d 1187; State v. Clark, 05-652 (La.App. 5 Cir. 2/14/06), 924 So.2d 282, writ denied, XXXX-XXXX (La.10/13/06), 939 So.2d 372. Mistrial is a drastic remedy, and the determination of whether the defendant has been prejudiced by the prosecutor's argument lies within the sound discretion of the trial judge. State v. Draughn, supra; State v. Williams, 41,731 (La.App. 2 Cir. 1/24/07), 950 So.2d 126, writ denied, XXXX-XXXX (La.11/2/07), 966 So.2d 599.
The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant unless the statement has been previously ruled admissible in the case. La. C. Cr. P. art. 767. However, there is no prohibition against referring to an exculpatory statement made by the defendant. State v. Jones, 263 La. 164, 267 So.2d 559 (1972).
In her opening statement, the prosecutor explained that the police developed Hall as a suspect because he was the last person to pay a water bill at the abandoned house. "So with this information they pull an older picture they had of Kendrick Hall." After Ms. Bowman failed to pick him from the photo lineup, "because that's an older picture, they pull a more recent picture of Mr. Hall," from his new driver's license. Ms. Bowman then picked him from the lineup:
Now, after the police get this information they go to the jail because they've realized * * * that's where they can find Mr. Hall. They go to Mr. Hall and they interview him and he gives a statement, and his statement is, it wasn't me, I was at home, you can ask my momma. So the police say, have you ever lived at 327 Wilkinson, he said, yes, we moved about a month ago; but, yeah, I lived there, but ever since we moved I have never ever been back, I don't go there because *873 we now live at 527 Wilkinson, I don't go back there. So with this information the police say, we'll be back, some charges may be added. (Emphasis added.)
The prosecutor's two references to Hall's "older picture" must be viewed in context with the subsequent reference to his "more recent picture" which was clearly identified as a driver's license photo. The reasonable implication was that the detectives were using driver's license photos. The district court was entitled to find that these remarks did not refer, either directly or indirectly, to any other crime alleged to have been committed by Hall. In view of the jurisprudence holding that "mug shots," "criminal history file" and "rap sheet" do not draw undue attention to the defendant's criminal record, we cannot conclude that the instant reference to "older pictures" mandated mistrial.
The prosecutor's reference to going "to the jail" to find Hall comes closer to offending Art. 770(2), but once again the context is key. The prosecutor did not say Hall was in jail "for another crime"; at that stage of the investigation, he may well have been in jail for the instant offenses, as Ms. Bowman had just identified him in a photo lineup. On this record, the district court did not abuse its discretion in refusing to grant a mistrial. For the same reasons, the court did not err in refusing to admonish the jury. Further discussion would likely have emphasized the "jail" reference more than the prosecutor's argument.
Finally, the statement to which the prosecutor made reference was in no way inculpatory, but rather exculpatory, as he denied going near the place where the stolen purse was found. As such, it is not subject to the prohibition of Art. 767. State v. Jones, supra. Moreover, Hall's statement was later found to be free and voluntary, thus relegating the error, if any, to harmless error analysis. State v. Gatti, supra. The district court did not err in denying the mistrial. This assignment of error lacks merit.

Excessive Sentence
By his second assignment of error, Hall urges the sentence of 99 years was constitutionally excessive for this offender and this offense, where there was no injury to the victim and the predicate offenses were property crimes.[4] He asserts that all the predicate offenses were distant in time and manner of commission and are not the kinds of crimes for which a maximum sentence should have been imposed.[5] Further, the court failed to state any reasons for sentence, in violation of La. C. Cr. P. art. 894.1. Contending that he was subject to no minimum sentence, he argues that the noncompliance with Art. 894.1 invalidates the sentence.
The state responds that under the habitual offender law, La. R.S. 15:529.1 A(1)(c)(i), Hall was subject as a fourth offender to a minimum of 99 years, and that the sentence imposed was in fact illegally lenient because it did not include an additional five years without benefits as required by La. R.S. 14:64.3.
If the fourth felony is such that, "upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed *874 for a first conviction but in no event less than 20 years and not more than his natural life." La. R.S. 15:529 A(1)(c)(i). Armed robbery carries a maximum sentence of 99 years without benefits. La. R.S. 14:64 B. Hall was therefore subject to a minimum term of 99 years without benefits for armed robbery as a fourth felony offender. He was subject to an additional five years for using a firearm in the offense. La. R.S. 14:64.3 A; State v. King, XXXX-XXXX (La.10/16/07), 969 So.2d 1228.
Where the legislature has prescribed a mandatory minimum sentence, there is no need for a trial court to justify, under Art. 894.1, a sentence it is legally required to impose. State v. Thomas, 42,322 (La.App. 2 Cir. 8/15/07), 962 So.2d 1119. The habitual offender law has been held constitutional in its entirety, so the minimum sentences it imposes on recidivists are also presumed constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Thomas, supra. The burden is on the defendant to rebut this presumption. To do so, the defendant must clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Johnson, supra; State v. Thomas, supra. The lack of violence in the predicate offenses, or in the instant offense, cannot be the only reason, or even the major reason, for declaring a mandatory minimum sentence under R.S. 15:529.1 unconstitutional. State v. Johnson, supra; State v. Cunningham, 42,831 (La.App. 2 Cir. 12/5/07), 972 So.2d 1193.
On this record, we do not find clear and convincing proof that Hall is exceptional, or a victim of the legislature's failure to assign meaningful sentences. A gun was drawn in Count 1, and one was threatened in Count 2; the prior offenses show a predilection for taking other people's property. In short, the district court did not err in failing to deviate downward from the prescribed minimum. This assignment of error lacks merit.
The state correctly shows that the sentence was, in fact, illegally lenient, as it does not include the additional five years mandated by R.S. 14:64.3 A. Although La. C. Cr. P. art. 882 grants the appellate court the power to correct illegal sentences, courts have traditionally abstained from exercising this power when the defendant alone has appealed and the state has not sought independent review of the sentence. State v. Fraser, 484 So.2d 122 (La.1986); State v. Payn, 95-2166 (La.1/26/96), 666 So.2d 661; State v. Anderson, 33,630 (La.App. 2 Cir. 6/21/00), 764 So.2d 179. The state did not raise the issue of illegality in the district court; it expressly agreed with the imposition of the 99-year sentence at the second sentencing hearing; and it has neither appealed nor answered the appeal. We therefore decline to correct the sentence.

Conclusion
We have reviewed the entire record and find nothing we consider to be error patent. La. C. Cr. P. art. 920(2). For the reasons expressed, Kendrick Darney Hall's convictions, adjudication and sentences are affirmed.
AFFIRMED.
NOTES
[1] The verdict was 10-2 on Count 1 and unanimous on Count 2.
[2] The court initially sentenced him to the mandatory life at hard labor under La. R.S. 15:529.1 A(1)(c)(ii), but later agreed that subsection A(1)(c)(i) applied, with a range of 99 years to life.
[3] Before trial, defense counsel advised the court that he and the prosecutor had held a sidebar conference "and it was agreed that the state will not ask her to make any in-court identification[.]" The prosecutor concurred: "We won't ask her to identify Mr. Hall in open court, but any identifications that took place in the past, i.e., a photographic lineup, that we can discuss that and question her on that." R.p. 129. In light of this agreement, we find no substance to Hall's complaint, raised for the first time on appeal, that Ms. Bowman failed to identify him in open court.
[4] Hall does not challenge the 40-year sentence on Count 2.
[5] The convictions all arose by guilty plea: (1) simple burglary, April 1999; (2) unauthorized entry of a business, September 1999; (3) unauthorized use of a movable, February 2002; (4) unauthorized use of a movable, May 2003.