FREDERICKA HOMBERG WICKER, Judge.
 

 |2In this criminal proceeding, defendant/appellant Corey Dewayne Anderson appeals his armed robbery conviction
 
 [1]
 
 and sentence. He assigns as error the trial judge’s denial of his challenges for cause as to two prospective jurors — Robin Robert and Michael Torres — and the exces-siveness of the sentence. For the reasons that follow, we affirm the conviction; amend the sentence to delete the illegal portion, and as amended, affirm the sentence.
 

 Procedural History
 

 The state charged the defendant by bill of information with armed robbery with a firearm under La. R.S. 14:64 and La. R.S. 14:64.3, allegedly occurring on December 2, 2005. A jury found the defendant guilty as charged, and he was sentenced to serve 25 years at hard labor without benefit of parole, probation, or suspension of sentence. As provided by La. R.S. 14:64.3, an additional consecutive five years without benefit of parole, probation, or suspension for the |3use of a firearm in the robbery was added.
 
 [2]
 
 The trial judge granted the defendant’s application for post-conviction relief requesting an out-of-time appeal and this appeal followed.
 

 Trial
 

 Facts
 

 On the night of December 2, 2005, Travis Klibert was the victim of an armed robbery that occurred near a LaPlace bar in St. John the Baptist Parish. The robber took, among other things, Mr. Kli-bert’s Nextel cell phone, wallet, $95, and bank card. A few days later, the defendant, who was 18 at the time and who had obtained his GED, gave a statement to the police confessing to the crime after being advised of his
 
 Miranda
 
 rights and waiving them. Mr. Klibert later identified the de
 
 *327
 
 fendant in a photographic lineup within seconds of viewing the photographs.
 

 Mr. Klibert testified that as he walked toward the bar, a short black male wearing black clothing approached him. In court, Mr. Klibert identified the defendant as the robber. Mr. Klibert testified that he saw the end of the barrel of a small gun positioned inside the defendant’s sleeve. Using his right hand, the defendant pointed the gun at him and told him to empty his pockets. Mr. Klibert said that the defendant asked Mr. Klibert to turn around and walk toward Mr. Klibert’s truck. He stated that the defendant threatened to shoot him if he turned around. When Mr. Kli-bert arrived at his truck, he turned and spotted the defendant driving away in an older model dark-colored car.
 

 The testimony at trial from Mr. Klibert and St. John the Baptist Parish Sheriff officers Major Robert Hay, Detective Thomas Young, Jr. and Detective Jerry Fountain established that Mr. Klibert’s Nextel cell phone had a GPS tracking pdevice. In a statement to the police, the defendant said that he broke the victim’s cell phone and placed its “SIM Card” into another phone.
 

 Detectives Young and Fountain located the “SIM Card’s” GPS position in Baton Rouge. The detectives also obtained telephone call logs. The logs indicated that one Baton Rouge telephone number was frequently called. Locating the recipient caller’s address, with the aid of the Baton Rouge police, the detectives proceeded to that location. They were informed by a woman at the address that her daughter had been receiving calls from a boy.
 
 [3]
 
 Meanwhile, a vehicle matching the victim’s description of the car drove up to that location while the officers were speaking to the woman. The defendant and the recipient of the calls exited the vehicle. Detective Young stated that he placed a call to the victim’s phone. The phone in the defendant’s pocket began to ring. Detective Fountain stated that after being advised of his rights, the defendant agreed to allow the detectives to examine his phone. Detective Young testified that the detective’s number was the last number on the cell phone that the defendant possessed. Detective Young stated that Detective Fountain advised the defendant of his rights once again.
 

 Detective Young said that the defendant was again advised of his rights at the station. After waiving his rights, the defendant admitted he pointed a gun at a man and robbed that person in St. John the Baptist Parish, taking the person’s money and phone. The defendant told the detectives that the gun present in the car at the time of his arrest was the same gun that was used in the robbery. According to Detective Young, the Baton Rouge police took the weapon into custody because it was a stolen weapon. Also, the defendant was driving a stolen vehicle at the time of the police encounter and the defendant had outstanding warrants for his arrest.
 

 |fiIn his statement to the police that was introduced into evidence, the defendant stated that he understood his rights and was willing to answer questions. He acknowledged that no promises or threats had been made to him and no pressure of any kind had been used against him. He also acknowledged that he had possession of the “SIM card” that was the subject of the robbery. He said that he walked up to the victim, pointed a gun at the victim, and asked the victim to empty his pockets and to give the defendant his money. He stated that he needed money at the time be
 
 *328
 
 cause he was broke, was living on the streets, and he had no job. He said that he had never been convicted of anything and had nothing pending in state court at the time of his arrest. Although he denied smoking any marijuana on the day he gave the statement, he admitted to smoking marijuana probably three times a week. He also said that he had given a crack smoker a couple of dollars for the car and he did not ask that person if the car was stolen. He stated that the gun that he used in the robbery was the same gun that the officers found in the car in which the defendant was driving.
 

 At trial, the defendant denied knowing anything about the robbery or ever being in Laplace. He said that although he gave a statement to the police, he was pressured by the officers to give those answers to the questions. He testified that on the date of the incident he was smoking a great deal of marijuana and doing a lot of cocaine so he could not pinpoint his exact location. He also stated that he used drugs to purchase the phone on the street.
 

 Voir Dire
 

 The voir dire consisted of the examination of two jury panels, of 30 and 24 prospective jurors, respectively. Defense counsel exhausted all of his peremptory challenges.
 

 |fiAt the outset, before the two panels had been selected, the trial judge initially introduced persons who would be involved in the case. This introduction included Mr. William 0. Regan from the District Attorney’s Office who was representing the state. The trial judge informed the prospective jurors that if the question posed was too personal and the perspective juror did not want to answer in open court, that person was directed to call it to the trial judge’s attention. Then, the trial judge would conduct a side-bar outside the presence of the panel. The trial judge instructed the prospective jurors to truthfully answer the questions.
 

 After selecting prospective jurors for the particular panel, the voir dire exploring areas of possible impartiality and bias proceeded in a similar fashion for both panels. First, the trial judge asked individual panel members general biographical information. Second, the trial judge asked questions concerning possible impartiality or bias directed to the entire panel. She asked the members to raise their hand in response as she proceeded row by row. Fourth, when she received responses to her questions, the trial judge elicited from the prospective jurors the particular nature of their responses. At times, she questioned prospective jurors individually at a side-bar out of the presence of the other prospective jurors. At other times, she engaged in “block group” questioning of those prospective jurors who had responded to her questions exploring potential impartiality and bias. When engaged in “block group” questioning concerning potential impartiality and bias, the trial judge acknowledged those individual members who responded to the question. She repeatedly asked if there was anyone else who would respond. If there was no response, the court reporter indicated there was none. In the first panel, the trial judge always acknowledged the lack of a response by stating “okay” or “all right.” After making the acknowledgment for the record, the trial judge moved on to the next question.
 

 |7The defendant argues that the trial judge erroneously denied his challenges for cause as to Mr. Robin Robert and Mr. Michael Torres, who were members of the first panel. The following occurred during the voir dire of the first panel.
 

 After obtaining biographical information, the trial judge posed her first question directed to all panel members. She asked
 
 *329
 
 whether any members knew any of the people she had introduced to them at the outset. Mr. Robert was among those prospective jurors that the court recognized as responding to its question. Mr. Torres stated that the prosecutor was his lawyer. The trial judge directed the following question to the “block group”:
 

 All of you who answered that you know somebody up here, is your acquaintance with these people or this person, or your knowledge of them, or your relationship with them, such that you can’t be fair and impartial in this case and put aside their personal acquaintance? Anybody has a problem doing that? Anybody could not do that?
 

 The trial judge recognized Miss Mitchell as responding to the question. Miss Mitchell stated that: “Yeah. My daughter’s got criminal charges that are still pending.”
 

 Next, the trial judge stated:
 

 Okay. Anybody else? Would that interfere with anybody else’s ability to be fair and impartial?
 

 The court reporter noted: “(No response).”
 

 The trial judge responded “okay” and proceeded to the next question.
 

 Thus, the trial judge indicated that there was no one else who responded that they could not be fair and impartial. Mr. Torres unlike Miss Mitchell did not indicate that he could not be fair and impartial although he, like other members of the “block group” was giving the ample opportunity to do so.
 

 Later, the trial judge questioned the panel members regarding whether the individual himself or members of their immediate family had been arrested for or 18convicted of felonies or misdemeanors as opposed to traffic tickets. Mr. Robert was one of the members who responded. He said that he had a brother and would like to speak at the side-bar.
 

 At the side-bar, Mr. Robert stated that he had a brother who was arrested for armed robbery but the charges were dropped after 12 months. The trial judge asked whether the charges were completely dropped or whether they had been reduced to a lesser charge. Mr. Robert replied: “No, he didn’t serve any time at all, he had probation for two years after that.” The trial judge stated that if he had probation he must have been convicted. Mr. Robert replied that this occurred approximately 20 years ago and he could not recall exactly what happened. The trial judge asked Mr. Robert whether he thought his brother pled to a lesser offense than armed robbery. Mr. Robert replied that it was possible he did so. The trial judge asked Mr. Robert whether this occurrence in his family would be such that he could not be fair in this case. Mr. Robert replied: “No, I don’t have a problem with that.” The trial judge asked whether the prosecutor or the defense counsel had any questions and they did not.
 

 In conclusion, the trial judge asked the entire panel, whether any of them had any reasons whatsoever why they could not sit on this jury as a fair and impartial juror. Mr. Matherne responded affirmatively and gave his reason. The trial judge asked if there was anyone else. The court reporter noted there was no response. The trial judge acknowledged there was no response by stating “all right.” She then turned the questioning over to the prosecutor and the defendant.
 

 After the prosecutor completed his questioning, defense counsel questioned the panel members. Defense counsel asked the prospective jurors if there was anyone who was a member or a volunteer of such
 
 *330
 
 organizations as crime stoppers, and an anti-crime organization, like MADD. Mr. Poindexter responded that his ^neighborhood had a neighborhood crime watch. Defense counsel then asked the following question: “Does anyone here believe that crime has run rampant, it’s out of control?” The court reporter noted that Mr. Johnson raised his hand. Defense counsel asked Mr. Johnson for an explanation. Mr. Johnson replied, “Turn on the news and read the newspaper.” He also stated: “Every day somebody is getting robbed, shot.” Defense counsel asked whether based on Mr. Johnson’s perception would he take that out on the defendant just because he believed that crime was out of control. Defense counsel also asked that if the defendant was found to be guilty would Mr. Johnson take that out on him. Mr. Johnson replied, “Probably.” The trial judge stated that she did not understand the question. Defense counsel then stated “If he was to ll:21:00[sic] with the evidence would he take that out against Mr. Anderson.” Then, defense counsel asked whether anyone else thought crime was out of control.
 

 The court reporter noted that Mr. Robert raised his hand. Defense counsel asked Mr. Robert whether that would bias his opinion toward the evidence. Defense counsel also directed a question to be other panel members. Mr. Robert responded, “No.” Defense counsel asked whether there was anyone else. Ms. Johnson replied that she believed that crime was out of control. She said that she understood that people have to be judged. Defense counsel then directed his attention to Mr. Lott. Mr. Lott stated that he thought it was out of control.
 

 Defense counsel then asked whether there were any crimes that particularly upset anyone such as murder or rape. Mr. Lott responded that this was anything to do with children.
 

 Mr. Torres responded that this concerned crimes involving children and “old folks.” Ms. Smith added that this included handicapped people.
 

 |inMr. Robert asked whether defense counsel was asking about any crimes that were upsetting. Defense counsel stated: “That upset you, any type of crime that particularly upsets you like murder, rape.” Mr. Robert responded: “Pretty much all of them.”
 

 Defense counsel then asked: “But is there any crime that okay, if he’s charged with rape, that would skew your view of the evidence?” Mr. Robert responded: “I think crimes with a weapon against an unarmed person is more or less despicable that somebody would do that. Especially to steal property or, you know, a car or whatever.”
 

 Ms. Pleasant stated this was a crime having to do with rape or domestic abuse of children. Defense counsel asked if there was anyone else and the court reporter noted: “(No response).”
 

 The state challenged Ms. Mitchell for cause. Defense counsel argued that Ms. Mitchell was not biased simply because defense counsel represented her daughter. The prosecutor responded that if defense counsel was the attorney representing the daughter in a criminal charge, the prosecutor thought there was a serious issue about her impartiality. The trial judge stated that she thought that she asked Ms. Mitchell whether her relationship with that person would be such that she could not be fair and impartial. The trial judge said that she thought Ms. Mitchell said it would affect her because defense counsel represented her daughter. The trial judge said that although Ms. Mitchell said she could be fair regarding every other answer, she
 
 *331
 
 specifically said that because defense counsel was representing her daughter, the trial judge thought she said she could not be fair. Thus, the trial judge stated she was going to grant that challenge for cause.
 

 Defense counsel stated that Mr. Torres said that the prosecutor represented him in a civil matter. The prosecutor pointed out that in answer to the court’s ^question he said it would not affect him. The trial judge then asked the prosecutor what these matters concerned and whether the prosecutor was still Mr. Torres’ lawyer. She stated that she thought Mr. Torres stated that the prosecutor was his lawyer at this time. The prosecutor responded that he was not doing anything for Mr. Torres currently. He was not on a retainer. The prosecutor said that he had prepared wills for Mr. Torres and his wife “a while back.” He also did some property transfers “a few years ago.” Then, he set up an inter vivos trust about 10 years ago. The trial judge denied defense counsel’s challenge for cause.
 

 When defense counsel challenged Mr. Robert for cause, the prosecutor objected. The trial judge asked the basis for the challenge. Defense counsel responded: “Basically he said anything with Armed Robbery is despicable and he went on, you know, about how terrible it was, anybody takes anything for money, you know, and he basically said it would skew his view when I asked him about the crimes that he thought upset him particularly.”
 

 The prosecutor stated that he did not think there was anything prejudicial about being upset about the crime. The prosecutor said that it still required proof beyond a reasonable doubt as to whether this defendant committed that crime. The trial judge agreed. She stated: “And he’s the one who had a brother that actually committed an Armed Robbery also.” Defense counsel replied, “He had one brother and he also had also some victims in his family as well. He is on both sides of it.” The trial judge stated that she did not know about the victims but she knew about the brother. She said: “No, I, I think you kind of, you, when you, the way you asked that question, any crimes that upset you, and the jury really got into that, but I don’t think he said it would interfere with his ability to be fair and impartial. So I’m going to deny that one.” The defendant used his peremptory challenges for prospective jurors Mr. Robert and Mr. Torres.
 

 | iaThe trial judge in this instance was very conscientious, attentive and fully aware of the prospective jurors’ responses to questions. She was cognizant of all jurors whose impartiality was questionable.
 

 Discussion
 

 The defendant argues that the trial court improperly denied the defense’s challenges for cause of prospective jurors Mr. Robert and Mr. Torres. The state argues that the trial court did not abuse its wide discretion in denying the challenges but notes that there was no contemporaneous objection to those denials.
 

 In the present case, the defense counsel gave reasons for the challenges but when the trial judge denied them, he did not formally object. The state claims that in the absence of an objection, the assignment is not preserved for review.
 

 Two Louisiana Code of Criminal Procedure articles address the contemporaneous objection rule: La. C. Cr. P. arts. 800(A) and 841(A). La. C. Cr. P. art. 800 provides:
 

 A. A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of
 
 *332
 
 the ruling. The nature of the objection and grounds therefor shall be stated at the time of objection.
 

 La. C. Cr. P. art. 841(A) states (emphasis added):
 

 An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
 

 In
 
 State v. Pinion,
 
 06-2346, p. 10 (La.10/26/07), 968 So.2d 131, 136 (per curiam), the Court relied on the above-emphasized portion of La. C. Cr. P. art. 841(A) in holding that in jury selection, counsel satisfies the requirements of Louisiana’s contemporaneous objection rule by stating his grounds for a cause | ^challenge and then by removing the juror with one of his remaining peremptory challenges when the court declines to excuse the juror for cause.
 

 In
 
 State v. Vanderpool,
 
 493 So.2d 574, 575 (La.1986) (citations omitted), the Louisiana Supreme Court interpreted the above articles. It held that it is settled that an objection need not be raised by incantation. Rather, “[I]t is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.” The Court explained that the requirement of a contemporaneous objection is not meant to be inflexible but is designed to “to promote judicial efficiency and to ensure fair play.” The Court cautioned that Article 800 should not be read to differ in this respect from Article 841.
 

 Here, it is clear that the defendant made known the reasons for the challenges and that he removed each juror with one of his remaining peremptory challenges when the court declined to excuse the jurors for cause. Therefore, he preserved the issues for appeal.
 

 The Sixth Amendment of the United States Constitution guarantees the accused the right to a trial by an impartial jury.
 
 State v. Anderson,
 
 06-2987, p. 27 (La.9/9/08), 996 So.2d 973, 995,
 
 cert. denied, Anderson v. Louisiana,
 
 — U.S. -, 129 S.Ct. 1906, 173 L.Ed.2d 1057 (2009). La. Const. art. I, § 17 guarantees the right to full voir dire examination of prospective jurors and to challenge those jurors peremptorily.
 
 Id.
 
 The number of challenges is fixed by law.
 
 Id.
 
 Thus, when a defendant uses all of his peremptory challenges, a trial judge’s erroneous ruling depriving him of one of his peremptory challenges constitutes a substantial violation of his constitutional and statutory rights, requiring reversal of the conviction and sentence.
 
 Id.
 
 06-2987 at 27-28, 996 So.2d at 996 (Citations 114omitted). Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and the defendant has exhausted his peremptory challenges. To prove there has been reversible error warranting reversal of the conviction, defendant need only show (1) the erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges.
 
 State v. Robertson,
 
 92-2660 (La.1/14/94), 630 So.2d 1278, 1281 (Citations omitted).
 

 The defendant in this case exhausted all of his peremptory challenges. Therefore, we must determine whether the trial court erred in denying the defendant’s challenges for cause as to potential jurors Mr. Robin and Mr. Torres. If so, then the defendant’s constitutional and statutory
 
 *333
 
 right to 12 peremptory challenges has been violated, prejudice is presumed, and there is reversible error requiring reversal of the conviction and sentence.
 
 Id.
 

 La. C. Cr. P. art. 797 provides grounds for challenges for cause, which include the following pertinent provisions:
 

 (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
 

 (3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
 

 (4) The juror will not accept the law as given to him by the court [.]
 

 A trial judge is vested with broad discretion in ruling on challenges for cause, and his ruling will be reversed only when a review of the entire voir dire reveals the judge abused his discretion.
 
 State v. Robertson,
 
 92-2660 (La.1/14/94), 630 So.2d 1278, 1281 (Citation omitted). A refusal by a trial judge to excuse a prospective juror on the ground he is not impartial is not an abuse of discretion where, after further inquiry or instruction (frequently called “rehabilitation”), the 115potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence.
 
 Id.
 
 “[A] challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror’s responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied.”
 
 Id., quoting State v. Hallal,
 
 557 So.2d 1388, 1389-90 (La.1990). The trial judge must look at the juror’s responses during his entire testimony, not just “correct”, isolated answers, or, for that matter, “incorrect”, isolated answers.
 
 Id., citing State v. Lee,
 
 559 So.2d 1310, 1318 (La.1990), cert. denied,
 
 Lee v. Louisiana,
 
 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991).
 

 Robin Robert
 

 The defendant argues that Mr. Robert was called to the bench and explained that the circumstances regarding his brother. Defense counsel acknowledged that Mr. Robert stated that he could be fair. Defense counsel, however, states that later in the voir dire, Mr. Robert told defense counsel that he thought crime with a weapon against an unarmed man in order to steal property was despicable. The defendant asserts that there was no rehabilitation by the state, defense, or the court from this comment. Based on the lack of rehabilitation after making that comment, the defendant argues that Mr. Robert could not be fair and impartial. The defendant also contends that since Mr. Robert’s brother, unlike the defendant, never served time in jail, Mr. Robert could have assumed there was something unique about the defendant’s background. In support of this observation, defense counsel notes that at trial it was determined that the defendant had been in jail. Moreover, defense counsel argues that Mr. Robert seemed to harbor a passion against armed robbery and never reacted to any other crimes discussed throughout the voir dire.
 

 | TfiDefense counsel argues that the trial judge never considered that Mr. Robert’s brother’s history could be a strike against the defendant.
 

 
 *334
 
 For the most part the defendant argues that somehow the fact that Mr. Robert’s brother was never in jail has affected Mr. Robert’s perception of the defendant. Yet, defense counsel admits that Mr. Robert stated that he did not think he had a problem being fair given his brother’s experience. With regard to the specific grounds for the challenge — Mr. Robert’s expressing that the crime of armed robbery was despicable, we find no basis for finding an abuse of the trial judge’s discretion in denying the challenge for cause.
 

 At first, Mr. Robert responded that most crimes upset him. When pressed by defense counsel whether there was any crime “if he’s charged with rape” that would skew his view of the evidence, Mr. Robert responded that he thought crimes with a weapon to steal property were despicable. Mr. Robert never said that his perception of the evidence was skewed as a result of his feelings about armed robbery crimes. In fact, defense counsel only referred to skewed evidence as it applied to rape. Also, in concluding her questioning of the panel, the trial judge asked the entire panel, whether any of them had any reasons whatsoever why they could not sit on this jury as a fair and impartial juror. The trial judge only acknowledged one response from another prospective juror. Thus, Mr. Robert did not indicate to the trial judge that he had a problem being a fair and impartial juror for any reason.
 
 [4]
 

 |17In the present case, there was no indication that Mr. Robert had any problems listening to the evidence given his feelings about armed robbery. Thus, there was no need to rehabilitate him because all he expressed was a strong feeling about that crime.
 

 As in
 
 State v. Ellis,
 
 28,282, pp. 9-10 (La.App. 2 Cir. 6/26/96), 677 So.2d 617, 625,
 
 writ denied,
 
 96-1991 (La.2/21/97), 688 So.2d 521, the trial judge was present throughout the voir dire and could assess Mr. Robert’s silent responses to the group questions. By failing to assert, when questioned, that he had a problem being a fair and impartial juror for any reason he obviously convinced the trial judge that he was rehabilitated in the event his feelings somehow suggested bias against the defendant. The trial court is vested with broad discretion in ruling on challenges for cause and these rulings will be reversed only when a review of the entire voir dire reveals an abuse of discretion.
 
 State v. Juniors,
 
 03-2425 (La.6/29/05), 915 So.2d 291,
 
 cert. denied, Juniors v. Louisiana,
 
 547 U.S. 1115, 126 S.Ct. 1940, 164 L.Ed.2d 669 (2006) (Citations omitted). Given the trial judge’s broad discretion in the matter, we cannot say it was error to deny the challenge for cause.
 

 Accordingly, this assignment lacks merit.
 

 Michael Toms
 

 The defendant argues that Mr. Torres stated that the prosecutor was his current attorney. The prosecutor ex
 
 *335
 
 plained at the bench that he did family wills, some property transfers, and the trust but he was not receiving a retainer at the time of trial. Defense counsel argues that all of that legal work, especially a couple’s will preparation, is a very personal matter and engenders a relationship between individual and their lawyer. Even though this occurred “a while back” there was 118still a familiarity between the prospective juror and the prosecutor that was unfair to the defendant.
 

 In
 
 Juniors, supra,
 
 the Louisiana Supreme Court explained that the purpose of allowing a challenge for cause is to secure a fair and impartial trial. 03-2455 at 12, 915 So.2d at 307. The key to securing this right is to ascertain whether there is anything in the disclosed relationship between a potential juror and the district attorney (whatever form that relationship takes) that would influence the juror’s judgment or that would persuade him or her to decide the case on any basis other than fairness and the evidence presented in court.
 
 Id.
 
 (Citations omitted). The Court noted that in
 
 State v. Lee,
 
 559 So.2d 1310, 1317 (La.1990), it held that the fact that a prospective juror had previously retained the district attorney in an unrelated legal matter and may do so again in the future was insufficient to warrant a challenge for cause absent a further showing a bias. 03-2425 at 13, 915 So.2d at 291.
 

 In the present case, the trial judge through questioning of the “block group” which included Mr. Torres ascertained that no one other than Miss Mitchell could be unfair and impartial because of their relationship with people involved in the case.
 

 As in
 
 State v. Ellis, supra,
 
 the trial judge was present throughout the voir dire and could assess Mr. Torres’ silent responses to the group questions. By failing to assert, when questioned, his acquaintance or relationship with the parties mentioned, including the prosecutor, was such that he could not be fair and impartial in this case and put aside his personal acquaintance, he obviously convinced the trial judge that he was not biased. Given the trial judge’s broad discretion in the matter, we cannot say it was error to deny the challenge for cause.
 

 Accordingly, this assignment lacks merit.
 

 119Excessive Sentence
 

 The trial judge ordered a presen-tence investigation. At the sentencing hearing, the trial judge stated that she had reviewed the presentence investigation before sentencing the defendant. Defense counsel asked the court to take into account the fact that at the time of sentencing the defendant was 20 years old. Defense counsel asked the court for leniency in order that the defendant is given the opportunity to start his life anew.
 

 The trial judge stated that she considered the entire situation. The defendant was convicted of the serious charge of armed robbery with a firearm. In reviewing the presentence investigation, the probation officer attempted to speak to the defendant who said that he had nothing to say or that he did not feel like talking about it. Thus, the trial judge stated that she had no record of any remorse or regret on the part of the defendant. She further stated that the offense could have easily resulted in the killing or serious bodily injury of a human being since a firearm was used. The trial judge stated that she considered the defendant’s youth but she also considered the serious nature of the sentence and the lack of remorse or regret on the part of the defendant. The trial judge then sentenced the defendant to a total of 25 years, which included the additional five years required by the enhancement statute. The sentence was im
 
 *336
 
 posed without benefit of parole, probation, or suspension of sentence.
 

 The defendant argues on appeal that he had just turned 18 in December 2005 when the offense occurred. He testified that he was on drugs and homeless. He purchased a cell phone with a stolen “Stem card” on the street because it was already set up and working. Furthermore, the defendant argues that the facts presented at trial did not warrant a 25-year sentence. The defendant explains that Mr. Klibert testified that the defendant approached him with a small gun in his 12osleeve and told him to empty his pockets and walk away. The defendant asserts that there was nothing heinous or violent about this particular armed robbery. The defendant contends that since the defendant was very young and the case presented the barest elements for the crime, the minimum sentence was warranted in this case.
 

 He asserts that the trial judge’s only justification for the sentence was that the defendant did not speak with the person conducting the presentence investigation. The trial judge believed that showed a lack of remorse. However, he maintains that belligerence and fear could have been just as likely the reason. Also, the trial judge considered what could have happened. The defendant states that while it is true that serious injury or death can result, the enhancement penalty accounts for the use of a firearm. And, a hypothetical scenario should not be used to punish the defendant a third time for the use of a gun. He maintains that the trial judge offered no other reasons as to why the minimum sentence was not imposed in this case. He asserts that the sentence is disproportionate to the crime and the defendant’s history. He contends that the trial judge failed to consider any mitigating circumstances and therefore the sentence should be reversed and the case remanded for resen-tencing in conformity with La. C. Cr. P. art. 894.1 because the sentence is constitutionally excessive.
 

 The state responds that the mandatory minimum sentence defendant could have received because the offense was committed using a firearm was 15 years. The state maintains that the trial court considered the youth of the offender, the defendant’s apparent lack of remorse, and other factors. The state notes that given the fact that the trial judge presided over the trial and was aware of all facts and circumstances that were relevant to sentencing, the state submits that the trial court did not abuse its discretion. It asserts that an appellate court should not determine 12Iwhether another sentence may be more appropriate but rather whether the trial court abused its discretion.
 

 The penalty for an armed robbery conviction is imprisonment at hard labor for ten to 99 years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64(B). At the time the instant offense was committed, the penalty for the use of a firearm during an armed robbery was imprisonment for an additional period of five years without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64.3(B). The tidal judge sentenced the defendant to imprisonment at hard labor for 25 years, five of which were for use of a firearm during the armed robbery. The defendant’s sentencing exposure, including the enhancement, was 15 to 104 years. His 25-year sentence was within the lower limits of the sentencing range.
 

 The defendant did not file a motion to reconsider his sentence. However, this court will review a sentence for bare excessiveness even where no motion for reconsideration is filed.
 
 State v. Stevenson,
 
 05-52, p. 11 (La.App. 5 Cir. 6/28/05), 908 So.2d 48, 55,
 
 writ denied,
 
 05-2592
 
 *337
 
 (La.6/2/06), 929 So.2d 1247 (Citation omitted).
 

 A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering.
 
 State v. Smith,
 
 01-2574, p. 6 (La. 1/14/08), 839 So.2d 1, 4 (Citation omitted). A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion.
 
 Id.
 
 On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion.
 
 Id.,
 
 01-2574 at 6-7, 839 So.2d at 4 (Citations omitted). A trial judge is in the best 122Position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing.
 
 State v. Williams,
 
 03-3514, p. 7 (La.12/13/04), 893 So.2d 7, 16,
 
 citing State v. Cook,
 
 95-2785 (La.5/31/96), 674 So.2d 957.
 

 In considering whether the sentencing court abused its discretion, the reviewing court should consider, “1) the nature of the crime, 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts.”
 
 State v. Pearson,
 
 07-332, p. 15-16 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656 (Citation omitted).
 

 The trial judge gave ample reasons for sentencing. As such, she demonstrated that she considered the nature of the offense and the nature and type of offender in determining the length of the penalty imposed.
 

 Although unclear from the record, it appears from the defendant’s statement that this was his first conviction. The Louisiana Supreme Court has held that a longer sentence, which is within the 35 to 50-year range, is acceptable for first offenders convicted of armed robbery.
 
 State v. Smith,
 
 01-2574, p. 7 (La.1/14/03), 839 So.2d 1, 4 (Citation omitted). In
 
 State v. Augustine,
 
 555 So.2d 1331, 1332 (La.1990), the Louisiana Supreme Court concluded that a 40-year prison term for an 18-year-old first offender convicted of armed robbery was not constitutionally excessive.
 

 In the present case, the crime committed by the defendant was more serious than an armed robbery. Armed robbery is “the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.” La. R.S. 14:64(A). Armed robbery with a firearm, La. R.S. 14:64.3, is a more serious form of armed robbery for which the penalty range is effectively 15 to 104 years.
 
 State v. Hall,
 
 43,125, p. 6 (La.App. 2 Cir. 6/4/08), 986 So.2d 863, 868,
 
 writ denied,
 
 08-1511 (La.3/13/09), 5 So.3d 116,
 
 citing State v. Ellis,
 
 42,520 (La.App. 2 Cir. 9/26/07), 966 So.2d 139,
 
 writ denied,
 
 07-2190 (La.4/4/08), 978 So.2d 325.
 

 In the present case, the trial judge considered the evidence presented at trial, which included' testimony from Detective Young that the defendant was driving in a stolen vehicle with a stolen gun in that vehicle. The defendant’s statement indicates that although the defendant had obtained his GED, the defendant was unemployed at the time and he was looking for someone to rob because he had no money. The trial judge concluded that the defendant showed no remorse because he refused to talk to the probation officer conducting the presentence investigation regarding the incident. The trial judge also had the opportunity to observe the defendant’s demeanor when he testified in court. The trial judge evidently considered that although youthful, the defen
 
 *338
 
 dant did not indicate that he was a good candidate for rehabilitation.
 

 Given the record in these proceedings and the trial judge’s ample reasons for sentencing, we find no abuse of the trial judge’s best discretion in sentencing defendant. Therefore, we find no merit to this assignment of error.
 

 Error Patent
 

 The defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with La. C. Cr. P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975); and
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request.
 

 The review reveals a sentencing error patent in this case. The trial judge sentenced the defendant to imprisonment at hard labor for 25 years without benefit of parole, probation, or suspension of sentence, which included the five additional years under La. R.S. 14:64.3 for the use of a firearm during the armed | ^robbery. On error patent review, we note that at the time of the offense La. R.S.14:64.3 did not include, as it does now, the additional provision that the sentence be served at hard labor. Effective August 15, 2006, La. R.S. 14:64.3 was amended by 2006 La. Acts, No. 208, § 1 to add that the sentence be served at hard labor. Hard labor is not authorized for the present five-year enhancement.
 
 State v. King,
 
 06-1903, pp. 8-9 (La.10/16/07), 969 So.2d 1228, 1232-33;
 
 State v. Otero,
 
 08-188, pp. 5-6 (La.App. 5 Cir. 12/16/08), 3 So.3d 34, 40. As in
 
 King, supra,
 
 we therefore amend this portion of the sentence to delete the order of hard labor. The sentence is otherwise affirmed.
 

 Decree
 

 For the reasons expressed, we affirm Corey Dewayne Anderson’s conviction of armed robbery with a firearm. We amend the sentence to delete the order of hard labor for the five-year enhancement under La. R.S. 14:64.3. In all other respects, the sentence is affirmed.
 

 CONVICTION AFFIRMED; SENTENCE AMENDED AND AS AMENDED AFFIRMED.
 

 [1]
 

 . The jury returned a verdict of “Guilty.” There is no ambiguity in the jury verdict in this case because the trial judge gave clear instructions to the jury. She instructed the jury that a vote of "Guilty" meant that the jury found the defendant was guilty of the offense charged — armed robbery with a firearm. Only one of lire listed verdicts carried this one-word designation.
 

 [2]
 

 . Because the defendant was charged with armed robbery with a firearm under both La. R.S. 14:64 and La. R.S. 14:64.3, he faced the mandatory additional five years for using a firearm. R.S. 14:64.3.
 

 [3]
 

 . At one point, the person was identified as the granddaughter.
 

 [4]
 

 .
 
 Compare State v. Tyler,
 
 619 So.2d 807, 813 (La.App. 1 Cir.1993),
 
 writ denied,
 
 624 So.2d 1225 (La.1993), the court found no abuse of discretion in the trial judge’s denial of a challenge for cause when the prospective juror expressed emotional feelings about the type of crime at issue and stated that she did not know if she would have problems listening to the evidence. The court held that "[djespite indicating she might have problems listening to the evidence, none of [the prospective juror's] responses implied that her personal experiences would affect her verdict or that she would be unable to render judgment based on the evidence.”
 
 Id.
 
 The court also noted that the prospective juror did not respond to earlier repeated questions by both the prosecutor and defense counsel concerning whether or not any of the jurors had any problems serving as a juror in this case because of the nature of the offense.
 
 Id.