926 So.2d 64 (2006)
STATE of Louisiana, Appellee
v.
Torius SCROGGINS, Appellant.
No. 40,746-KA.
Court of Appeal of Louisiana, Second Circuit.
March 22, 2006.
*65 John Cucci, Jr., Shreveport, for Appellant.
Paul J. Carmouche, District Attorney, Catherine M. Estopinal, Edward M. Brossette, Assistant District Attorneys, for Appellee.
Before STEWART, DREW and MOORE, JJ.
STEWART, J.
Torius Scroggins was found guilty following a jury trial of armed robbery. He was sentenced to serve 27½ years at hard labor without benefit of parole, probation or suspension of sentence. The defendant now appeals his conviction only. For the reasons that follow, we affirm his conviction and sentence.

FACTS
Scroggins was charged via a bill of information with armed robbery in connection with the December 23, 2000, robbery, rape, and homicide of Vickie McGraw. The record establishes that he was in a vehicle with three other men when the victim was spotted driving alone. They followed her to an apartment complex and parked beside her white 1996 Chevrolet S-10 Blazer. Two of the men, Aaron Wilson and Derrick "Monster" Bouya, got out of the vehicle and Wilson held a pistol to her head. Scroggins and the fourth man, Leon "Fat" Bagley, left and went to wait at Bagley's residence. About an hour later, Bouya and Wilson arrived at Bagley's residence. The men went outside to look at the vehicle that had been taken, and Scroggins saw a purse and credit cards in the vehicle. Bouya and Wilson told Bagley and Scroggins that they raped the victim and that they shot her since she had seen their faces. The men left Bagley's residence to take Scroggins home. On the way, they stopped to withdraw funds from an ATM, and Scroggins was given some of the money. The victim's vehicle was later recovered from an apartment complex where Scroggins was living and his fingerprints were found on the vehicle.
Following a trial, the jury voted 11-1 to convict Scroggins of armed robbery, and he was sentenced to serve 27½ years at hard labor without benefit of parole, probation or suspension of sentence. A motion to reconsider sentence was filed and denied and this appeal followed.

DISCUSSION

Insufficiency of Evidence
Scroggins alleges that the state failed to produce sufficient evidence to sustain a conviction of armed robbery. He further argues that the bill of information does not inform him that he is alleged to be a principal and that the only proof of his being near the crime committed on the victim was that he was a passenger in the automobile that brought the co-defendants to their victim. The state argues that Scroggins' own statement establishes his guilt as a principal when he admitted that when he joined the group he knew that *66 they were wanting to "hit a lick" and gave details of the activities as they searched for a victim. The state further argues that once the robbery began, Scroggins did nothing to distance himself from the crime and received a small amount of cash for his part in the offense. Although the record does not reflect that defendant filed a motion for post-verdict judgment of acquittal pursuant to La. C. Cr. P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Henson, 38,820 (La.App. 2d Cir.9/22/04), 882 So.2d 670; State v. Green, 28,994 (La. App. 2d Cir.2/26/97), 691 So.2d 1273.
La. R.S. 14:64 defines armed robbery as:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
The law of principals found in La. R.S. 14:24 reads:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
La. R.S. 15:438, regarding use of circumstantial evidence, provides:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
La. R.S. 14:10 defines criminal intent as follows:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
(2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The audiotaped interview with Scroggins shows that he was advised of his rights before being questioned on December 28, 2000. The recorded interview shows that the appellant made the following admissions:
1. Scroggins was picked up from Monster's house at around 7:30 p.m. on December 23, 2000, by the other three men who were in Fat's vehicle. He said, "They just came and got me and said they wanted to hit a lick or something." He further explained *67 that "hit a lick" meant they were "gonna take something from somebody." Scroggins also stated that it was "more than one person's idea" to take something and that he knew that Aaron had a handgun with him.
2. They went to Super Wal-Mart at the corner of Bert Kouns and Youree Drive where they spotted a red Expedition with 20" rims in the parking lot. He stated that "Aaron was gonna take it if somebody would have came (sic) to it. Didn't nobody (sic) come to it."
3. Aaron took a rifle out of the trunk. They were driving down 70th Street when "they were saying man, get that woman right there" referring to the victim driving a white SUV. He said they followed her and "she pulled up in the apartments" and parked.
4. The men parked beside the victim, and Aaron and Monster, who were both on the passenger side of the vehicle, got out. He said he saw Aaron put a gun to her head and that he and Bagley left at that point. When asked what the plan had been, he said they were going to "take the woman and put her in the backseat." He said that idea had been either Monster's or Aaron's.
5. He said the two men showed up without the woman and told them that they had shot her because she had seen their faces. He said weapons were brought in and that he went out to the vehicle and saw a purse and several credit cards.
6. Scroggins said he asked to be taken home and that on the way to drop him off they went to an ATM on Hearne Avenue and used the victim's card to withdraw money. He said he got only $20.00, but he thought the men had gotten about $500.00 in cash. The group then went to the Circle K near his house and bought gas. He stated he got home at "about one, two, something like that."
7. Scroggins admitted that the men came by his house the next morning. He answered yes when asked if he could have used the credit cards.
These admissions by Scroggins during this interview are corroborated by supporting evidence. For instance, testimony from a bank officer showed that there were several withdrawals of money from an ATM on December 23, 2000, shortly before midnight on the night in question. The investigating officer's testimony showed that the victim's vehicle was found at the same apartment complex where Scroggins was residing and that his fingerprints were found on the vehicle. While the law of principals does not require that the jury had to find that Scroggins actually participated in the act of the armed robbery itself, the issue to be resolved is whether or not there is sufficient evidence for the jury to have concluded from Scroggins' behavior that he had the intent to be involved in this crime. The law regarding principals in an armed robbery conviction has been explained well in State v. Tolliver, 35,930 (La.App. 2d Cir.5/8/02), 818 So.2d 310, when this court stated:
Only those persons who knowingly participate in the planning or execution of a crime are principals. State v. Pierre, 93-0893 (La.2/3/94), 631 So.2d 427. Mere presence at the scene is not enough to "concern" an individual in the commission of the offense. Id.; State v. Knowles, 392 So.2d 651 (La.1980). An individual may only be convicted as a principal for those crimes for which he *68 personally has the requisite mental state. State v. Pierre, supra; State v. Holmes, 388 So.2d 722 (La.1980).
The state may prove a defendant guilty by showing that he served as a principal to the crime by aiding another. La. R.S. 14:24; State v. Smith, 513 So.2d 438 (La.App. 2d Cir.1987). Under this theory, the defendant need not actually take anything to be found guilty of the crime. Also, a defendant convicted as a principal need not have personally held a weapon to be guilty of armed robbery. State v. Dominick, 354 So.2d 1316 (La. 1978). A person, who aids and abets another in a crime, is liable just as the person who directly commits it, although he may be convicted of a higher or lower degree of the crime, depending upon the mental element proved at trial. State v. Watson, 397 So.2d 1337 (La.1981), cert. denied, 454 U.S. 903, 102 S.Ct. 410, 70 L.Ed.2d 222 (1981). Armed robbery is a general intent crime, requiring that the defendant, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. State v. Battieste, 597 So.2d 508 (La.App. 1st Cir.), vacated in part on other grounds, 604 So.2d 960 (La.1992); La. R.S. 14:10(2).
A critical inquiry in robbery cases involving principals is whether or not the alleged principal had knowledge that the crime was going to take place. For example, in State v. Smith, supra, this Court affirmed the defendant's conviction for armed robbery, holding that he could be convicted as a principal to armed robbery, or to a lesser included offense, based on the fact that he stood by during two armed robberies. This Court held that the jury could reasonably infer that he intended to aid and abet by acting as a lookout.
Those persons who knowingly participate in the planning or execution of the crime are principals. State v. Pierre, supra. Further, the state must prove that defendant's participation was sufficient to convict him as a principal. Knowledge that a crime will be, or has been committed, is insufficient by itself.
(Emphasis added.)
In State v. Bates, 495 So.2d 1262 (La. 1986), the court found that the defendant was a principal in an armed robbery although it could not determine from the facts exactly what role he played in the crime. That court stated:
Defendant was present at the time of the robbery, either outside the car and immediately beside Clark and Shirley, or seated inside the car when Shirley used the gun and fired warning shots at Clark. He was certainly present at all times during the robbery but did nothing and said nothing to prevent the robbery. He accepted the clothes of the victim from Shirley and went through the wallet. Items from the victim's wallet were later found in Bates' wallet and Clark's wallet was found in the defendant's possession when he was arrested. He therefore shared in the proceeds of the robbery. The robbery occurred with the use of Bates' gun and his car. It is true there is no evidence that Bates and Shirley planned the robbery in advance. Nor did anyone testify Bates held the gun on Clark during the first confrontation on the bridge or that he threatened Clark at that time or forced the removal of his wallet or clothing. Nevertheless, we find ample evidence to conclude Bates was a principal to the robbery of Clark . . .
In Bates' case, he was either inside or outside the car at the time of the robbery. He did nothing to stop the crime or to tell Shirley that his actions were *69 wrong, or to take his gun from Shirley. Bates kept possessions of Clark that were taken during the robbery. There is sufficient evidence to find Bates was a principal to the armed robbery of Clark, even though there is no evidence to show Bates held the gun during the robbery phase of this crime.
Scroggins' involvement with this group was from 7:30 p.m. until the wee hours of the next morning. The group made several stops along the way before it accomplished what this defendant knew it had clearly set out to do"hit a lick." A person who did not want to be involved in an armed robbery would not have continued to get back into the vehicle with a group of men who were specifically looking for a victim to rob. Since the group of men made so many stops during the course of the evening, Scroggins had several chances to leave the group. The incriminating evidence is derived only from Scroggins' admission to his actions that evening and does not include a confession of any culpability. However, his intent to participate in this crime can be inferred from his actions of staying with the men after he knew their plans and knew they were armed, as well as his action of waiting on Aaron and Monster to return to Fat's house. The evidence supports a finding that the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.
Even if the evidence is considered to be only circumstantial, the evidence is sufficient to convict in that it meets the requirements of La. R.S. 15:438 which states:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
The record shows that the jury was instructed that if the conviction was based solely on circumstantial evidence, the evidence must exclude every reasonable theory or hypothesis of innocence. A review of the tape shows that during this event, there was nothing to indicate that the defendant was afraid of these three men or that they forced him to be with them during their hunt for a vehicle to steal. We find that there is enough information in the admissions made by Scroggins to support the jury's finding that he was a willing participant in this armed robbery.
We note that the appellate counsel did not actually brief the argument that the state did not allege or inform the defendant in particular that he is alleged to be a principal. As also noted by the state, no motion to quash the bill of information was filed; therefore, this argument has not been preserved for review on appeal.
Further, the state correctly argues that there is no requirement that the charging instrument make this distinction. In State v. Haley, 38,258 (La.App. 2d Cir.4/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.6/24/05), 904 So.2d 728, we stated:
There is no requirement that an indictment explicitly name the accused as "principal." That the accused is indicted for the offense itself, and not charged as an accessory after the fact, irrefutably evidences that he is charged as a principal. State v. Peterson, 290 So.2d 307 (La.1974).

Motion for Mistrial
Scroggins argues that the trial court erred by failing to declare a mistrial after a member of the jury venire stated *70 the defense counsel and his partner did not "defend anybody that's not guilty." He argues that this prejudicial remark prevented him from receiving a fair trial.
The state argues that Scroggins was not entitled to a mistrial and that the defense counsel did not request an admonition. The record further shows that the trial court took steps to insure that this potential juror had not expressed this opinion to others in the venire and gave the defense counsel an opportunity to question the remaining jury pool. The state also notes that while the trial court did not quash the venire, it did order a new panel before proceeding. The following statutes provide guidance. First, La. C. Cr. P. art. 770 reads, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . .
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An Admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
Next, La. C. Cr. P. art. 771 reads, in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
. . .
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Finally, La. C. Cr. P. art. 775 reads, in part:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
. . .
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
. . .
(6) False statements of a juror on voir dire prevent a fair trial.
. . .
When the prosecutor asked his first question during voir dire, whether or not anyone knew him, the defense counsel or the defendant, prospective juror, Candace O'Neill, replied:
I know who Daryl Gold is in business with, Flowers, and my partner in business, and my best friend is someoneyour partner defended that Janathan Dagenhart, and I don't think you guys defend anybody that's not guilty, after that.
*71 The defense counsel immediately stated that he needed to make a motion outside the presence of the jury panel. He then stated that her remark had "poisoned this venire" and sought to quash the venire. After the state responded that there was no vehicle for quashing the venire and that there had been no showing of prejudice or that the jury venire has been contaminated in any manner, the defense counsel moved for a mistrial under La. C. Cr. P. art. 775.
The trial court denied the motion and gave the defense counsel an opportunity to "question any of the prospective jurors from the panel." The attorney questioned Ms. O'Neill and asked if she had discussed the Dagenhart case with any of the other members of the venire. She replied, "Not anymore. As a matter of fact a woman asked me, `What did you say up there?' And I saidshe goes, `Can you say?' And I said, `I'm not saying anything else.'" The defense counsel opted not to question any other members of the prospective jurors because that would bring more attention to the situation.
Under the provisions of La. C. Cr. P. arts. 771 and 775, the trial court is given the discretion of deciding whether or not such a remark is so prejudicial that a mistrial is merited. In State v. Butler, 615 So.2d 496 (La.App. 3d Cir.1993), writ denied, 94-0634 (La.6/28/96), 675 So.2d 1107, a prospective juror made a disparaging remark about the defense counsel's veracity. The trial court found that because it was possible none of the other jurors had even heard the comment, no mistrial or admonition was necessary.
Here, the record does not show whether or not the other members of the panel heard the remark. When given the opportunity to do so, the defense counsel chose not to question any of the other members of the jury venire to see if they heard the comment or to establish any other facts to show prejudice. The record reflects that the instructions to the jurors regarding the presumption of innocence which were given at the beginning of the case and at the close of the case are adequate to cure any influence that the prospective juror's comment would have had on the jury venire. The record supports a finding that the trial court did not abuse its discretion by denying the motion for mistrial. It is evident from the record that the remark, both by its content and the rest of the safeguards regarding the presumption of innocence, did not make it impossible for the defendant to obtain a fair trial. This assignment lacks merit.

Jury Charges
Scroggins argues that the trial court erred in failing to include the special jury charge regarding specific intent. The state argues that the trial court did not err since armed robbery is a general intent crime. La. C. Cr. P. art. 807 reads:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court. A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
The record shows that the defense counsel filed a written request for jury instructions and asked the following paragraphs be added:
Principal. All persons concerned in the commission of a crime are principals and are guilty of the crime charged if, *72 whether present or absent, they directly commit the act constituting the offense, aid and abet in it's (sic) commission, or directly or indirectly counsel or procure another to commit the crime.
In deciding whether the defendant had a specific intent to commit a crime you must find that the defendant had a specific intent. You may not find specific intent from the mere fact that a defendant knew of his co-conspirators (sic) intent.
The trial court did not include the second portion of the requested language. The instructions did include the definitions of specific and general intent and that attempt was defined as having a specific intent to commit a crime. After the instructions had been read to the jury, the defense counsel objected to the omission of his requested language stating that he offered that instruction to the court since some of the possible verdicts in this case required specific intent. He stated he had gotten the instructions from a treatise which cited State v. West, 568 So.2d 1019 (La.1990). The trial court stated that he understood that the defense counsel was "being specific, but I'm doing it specifically and generally." It should be noted that West, supra, is a first degree murder case. The defense counsel was correct in noting that the responsive verdict of the attempted armed robbery and the lesser included crimes would require specific intent. However, as worded, the requested jury instruction did not make that distinction and since armed robbery is only a general intent crime, the requested language could have been misleading.
In the instant case, the trial court appropriately instructed the jury on the law of principals and intent. In order to use the instructions requested by the defense, the trial court would have had to give additional instruction to limit and explain this additional instruction. The appellate counsel has not shown how the failure to include this additional clause has prejudiced Scroggins since he was found guilty of a general intent crime. This assignment lacks merit.

Abandoned Arguments
Lastly, Scroggins claims that the fact finder failed to give proper consideration to available evidence. However, appellate counsel has not briefed this issue. Assignments of error which are neither briefed nor argued are considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir. 1989), writ denied, 558 So.2d 1123 (La. 1990). This assignment is deemed abandoned.

CONCLUSION
The evidence adduced, is sufficient to support the jury's finding that the appellant is guilty of armed robbery. The other issues regarding trial errors lack merit. Thus, the conviction is affirmed.
AFFIRMED.