# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1116

STATE OF LOUISIANA

VERSUS

RONALD G. ACKER, JR.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR-2011-447
HONORABLE MARTHA ANN O'NEAL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Phyllis M. Keaty, Judges.

**CONVICTIONS AFFIRMED; SENTENCE FOR FIRST DEGREE ROBBERY AFFIRMED; SENTENCES FOR ARMED ROBBERY VACATED; REMANDED FOR RESENTENCING.**

**David W. Burton**
**District Attorney – Thirty-Sixth Judicial District**
**Richard F. Blankenship**
**Assistant District Attorney**
**P. O. Box 99**
**DeRidder, LA 70634**
**(337) 463-5578**
**COUNSEL FOR APPELLEE:**
      **State of Louisiana**

**Teresa Culpepper Carroll**
**Bobby L. Culpepper & Associates**
**525 East Court Ave.**
**Jonesboro, LA 71251-3497**
**(318) 259-4184**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **Ronald G. Acker, Jr.**

**PICKETT, Judge.**

## FACTS

Three young men, Joshua Porter, Darrell Darden, and Ronald G. Acker, Jr., the defendant in this case, went on a crime spree between May 16 and 17, 2011. In four separate incidents, the three men robbed persons at gun point.

The defendant was originally charged by a bill of information with four counts of armed robbery with the use of a firearm, violations of La.R.S. 14:64 and 14:64.3. On September 9, 2011, he pled guilty to all four counts. However, the defendant filed a "Motion to Withdraw Plea of Guilty" on January 11, 2012. On January 23, 2012, the motion was granted and trial was scheduled. On May 17, 2012, the state filed an amended bill of information, charging the defendant with three counts of armed robbery. The defendant was arraigned and pled not guilty to the three charges.

Jury trial commenced on May 21, 2012, and on May 24, 2012, the defendant was found guilty of one count of first degree robbery and two counts of armed robbery with use of a firearm. He was sentenced on May 31, 2012, to fifteen years at hard labor on each of the convictions, to be served concurrently, without the benefit of parole, probation, or suspension of sentence.

The defendant has perfected a timely appeal, wherein he alleges six assignments of error.

## ASSIGNMENTS OF ERROR

1. The jury erred, as a matter of law, in convicting the defendant of armed robbery and first degree robbery based on insufficient evidence to support the convictions.

2. The District Court erred, as a matter of law, in ruling that the defendant's full statement to law enforcement officials was admissible when it contained information about other crimes for which the

defendant was not on trial and in apparently not having the pre-trial hearing on same recorded.

3. The District Court erred, as a matter of law, in failing to rule on the record (according to the trial transcript) on numerous objections made by counsel during trial.

4. The District Court erred, as a matter of law, in failing to amend the jury instructions as requested by defense counsel regarding the repeated use of the word "principal" in connection with the elements of the crimes to be proven by the State.

5. The District Court erred as a matter of law, in allowing S-15 (a photograph of the defendant and two co-defendants) to be introduced and published to the jury over defense objection.

6. The District Court erred, as a matter of law, in rendering an excessive sentence in this case as to the first degree robbery conviction.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there is an error concerning the sentences imposed for armed robbery with use of a firearm.

Louisiana Revised Statutes 14:64 requires imposition of a sentence of not less than ten nor more than ninety-nine years without benefit of parole, probation, or suspension of sentence. Louisiana Revised Statutes 14:64.3(A) states:

> When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.

The defendant was convicted of armed robbery with a use of a firearm on Counts 2 and 3. On Count 1, he was convicted of first degree robbery. He was sentenced as follows:

2

And, therefore, at this time, on each count, one, two, and three, you are sentenced to serve 15 years on each count, concurrent one with the other, with the Department of Corrections, at hard labor, which the entirety of this sentence is without benefit of parole, probation, or suspension of sentence.

The absence of a specification by the trial court that the defendant's sentences for armed robbery with use of a firearm included a term under La.R.S. 14:64.3 renders them indeterminate.

This court addressed a similar issue in *State v. McGinnis*, 07-1419, pp. 8-9 (La.App. 3 Cir. 4/30/08), 981 So.2d 881, 888-89, stating in pertinent part:

> The trial court did not specify what portion, if any, of the Defendant's habitual offender fifty-year hard labor sentence, imposed for the conviction of armed robbery with use of a firearm, included the enhanced penalty of La.R.S. 14:64.3. . . .
>
> . . . .
>
> In *State v. King*, 06-1903 (La.10/16/07), 969 So.2d 1228, the supreme court held that a defendant convicted of armed robbery and sentenced under the habitual offender law can be sentenced to an additional five years under La.R.S. 14:64.3, when the dangerous weapon used is a firearm.
>
> In *State v. White*, 42,725 (La.App. 2 Cir. 10/24/07), 968 So.2d 901, the defendant was convicted of two counts of armed robbery with a firearm, and sentenced to thirty years at hard labor without benefit of parole, probation, or suspension of sentence on each count to run concurrently. On error patent review, the court noted that the trial court did not specify what portion, if any, of the defendant's thirty-five year hard labor sentence without benefits was imposed under La.R.S. 14:64.3. The court found that the absence of a specification that the defendant's sentences included a term under La.R.S. 14:64.3, rendered the defendant's sentence indeterminate. Therefore, the court vacated the sentences and remanded for resentencing according to law for clarification of whether the defendant's sentences included any additional punishment under La.R.S. 14:64.3.

This court finds that the absence of a specification that the Defendant's habitual offender sentence included an enhanced term of imprisonment under La.R.S. 14:64.3 renders this sentence indeterminate. Therefore, this court hereby vacates the habitual offender sentence and remands for resentencing in accordance with

3

La.R.S. 15:529.1 and 14:64.3. The trial court should clearly set forth the portion of the sentence enhanced under La. R.S. 14:64.3.

*See also State v. Billingsley*, 11-1425 (La.App. 3 Cir. 3/14/12), 86 So.3d 872.

Accordingly, we vacate the defendant's sentences for armed robbery with use of a firearm and remand the case for resentencing in accordance with La.R.S. 14:64 and 14:64.3. The trial court is instructed to set forth the portion of the sentences enhanced pursuant to La.R.S. 14:64.3.

## ASSIGNMENT OF ERROR NUMBER ONE

The defendant argues that the state failed to prove beyond a reasonable doubt that he was guilty of two armed robberies with use of a firearm and first degree robbery. He maintains that although he was present during the robberies, he was totally unaware that robberies were taking place until after the incidents commenced. Accordingly, the evidence was insufficient.

In *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27, this court held:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See *King*, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

Louisiana Revised Statutes 14:24 provides: "All persons concerned in the commission of a crime, whether present or absent, and whether they directly

4

commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."

Furthermore:

Only those persons who "knowingly participate in planning or execution of a crime" are principals to that crime. *State v. King*, 06-554, pp. 7-8 (La.App. 5 Cir. 1/16/07), 951 So.2d 384, 390, *writ denied*, 07-0371 (La.5/4/07), 956 So.2d 600 (quotation omitted). An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. *King, supra.* The mental state of one defendant may not be imputed to another defendant. Thus, mere presence at the scene of a crime does not make one a principal to the crime. *Id.* However, it is sufficient encouragement that the accomplice is standing by at the crime scene ready to give some aid if needed, although in such a case it is necessary that the principal actually be aware of the accomplice's intention. *State v. Anderson*, 97-1301, p. 3 (La.2/6/98), 707 So.2d 1223, 1225 (per curiam) (quotation omitted).

*State v. Mason*, 10-284, p. 9 (La.App. 5 Cir. 1/11/11), 59 So.3d 419, 425-26, *writ denied*, 11-306 (La. 6/24/11), 64 So.3d 216.

First degree robbery is defined as "the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon." La.R.S. 14:64.1(A). Armed robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by the use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:64(A).

At trial, all the victims testified. Craig Naquin testified that on May 16, 2011, he finished his shift at Boise at 11:00 p.m. On his way home he made several stops. The last stop was at Chase Bank's ATM in Deridder where he deposited a check and some cash. As he was driving home, he noticed a white SUV-type of vehicle following him at a distance. It turned down a street before his street, but he

saw that it circled around and stopped a short distance away from where he parked in his driveway. Mr. Naquin was getting some groceries out of his vehicle when he saw two men rapidly approaching him. He attempted to get back in his vehicle to pull away but dropped his keys. He recognized them as black males. One of the men had a handgun. They were dressed all in black, including black masks and gloves. One was tall, about six feet one or two inches, and skinny. The other man was about five feet nine inches in height. The taller man demanded money. Mr. Naquin gave him his wallet. He had no money in the wallet; however, it contained a debit card. He stated that the two men then rushed back to the waiting SUV. He stated one of the men jumped into the backseat on the passenger side of the vehicle. A few days later, he found two unauthorized charges on his debit card at an Exxon station totaling ninety dollars.

Steven Hanchey, Jonathan Miller, and Gregory Paul Taylor each testified regarding an incident that occurred the next night on May 17, 2011. At about 9:30 p.m., Mr. Hanchey drove to West Park where he met up with Mr. Miller and Mr. Taylor. The three friends were sitting in Mr. Hanchey's car when they noticed two men approaching the car from across the park. They had first seen a white SUV, later identified as a 2006 Envoy, drive around the park a few times then stop a short distance away. Mr. Hanchey stated that one of the men asked if he could borrow a cell phone. He and his friends hesitated, but then said they could borrow it. As they got out of the vehicle the man pointed a gun at them. He ordered them out to get down on the ground. Mr. Hanchey and Mr. Miller got down on the ground. Mr. Taylor, who was sitting in the backseat, ran and got away. The man with the gun stood over Mr. Hanchey and the second robber stood over Mr. Miller on the other side of the car. Mr. Miller stated the man standing over him did not

have a gun. When Mr. Taylor ran, the man with the gun started after him but returned when Mr. Hanchey sat up and hit him with the gun. The robbers took two dollars from Mr. Hanchey and approximately thirty dollars from Mr. Miller. They also took their cell phones. Mr. Hanchey described the two men as wearing all black including black ski masks. The physical descriptions of the two robbers were the same as the description given by Mr. Naquin. Finally, Mr. Hanchey testified that he believed there were three persons involved because when the two robbers ran back to the white SUV, the two appeared to get into the front and back passenger side of the vehicle, and the vehicle "took off immediately after they jumped in."

Jordan Wisby and Trevor West were talking in Mr. West's car in front of a convenience store about midnight on May 17, 2011, when a white SUV-type of vehicle pulled into the area. Three men came up to their vehicle, one man on the driver's side and two men on the passenger's side. The men were dressed all in black and their faces were covered. At trial Ms. Wisby stated they all had on black ski masks, but she admitted she told the police two of the men wore bandanas. They began banging on the windows, yelling for Mr. West and Ms. Wisby to get out of the car. The man on the driver's side banged on the window with a gun and demanded money. Ultimately, the men took Mr. West's and Ms. Wisby's cell phones then left. Mr. West identified the men as black. He stated the man on his side of the car wore a bandana over his face.

Ricky Johnson, a detective with the Beauregard Parish Sheriff's Office, was investigating the Naquin robbery which took place on May 16, 2011. He obtained video of the white Envoy driving back and forth in the street as Mr. Naquin was depositing money in the Chase Bank ATM. Two days later, on May 18th, Joshua

7

Porter was pulled over for a traffic violation. He was driving a white Envoy that fit the description of the vehicle seen in the video driving past the ATM. Reese Martin, a sergeant with the DeRidder City Police Department, testified that he obtained a search warrant and went to Mr. Porter's house to search the Envoy and Mr. Porter's residence. The Envoy, which belonged to Mr. Porter's mother, was not at the residence, but an old unused vehicle was in the driveway. A search of the vehicle located a gun case for a Taurus pistol, 9 mm Luger. The case had the serial number on it. After the Envoy arrived at the residence, a search of that vehicle turned up a 9 mm round in the car. Sergeant Martin further testified that he was able to obtain video from the Exxon Station where Mr. Naquin's debit card was used on May 16th. He testified that the video showed the white Envoy filling up at the gas station, then two additional cars, a white Ford Taurus and a yellow Cobalt fill up, all on the same debit card. It was later determined that the latter two cars belonged to the defendant and Mr. Darden. It was learned that on the morning of the 18th, the defendant and Mr. Darden left for Texas. When they returned on the 19th, the defendant was approachedby the police and he agreed to be interviewed.

The defendant did not testify at trial. However, the jury viewed the video recording of the interrogation, while reading along with the transcript of his interrogation. During the interrogation, the defendant insisted that Joshua Porter was the robber with the gun in each case and that he mostly had no knowledge Mr. Porter was going to commit the robberies until the robberies were occurring. His statement to the police was very elusive and difficult to follow. Pertaining to the robbery on May 16th, he said he "kind of knew" there was something up when they stopped and watched a person at Chase Bank's ATM late at night and then followed the person home. He indicated that Mr. Porter and Mr. Darden got out of

the car but he had no clue Mr. Porter was going to rob the man until he pulled out the gun. He also admitted he gassed up his car after the robbery with the victim's debit card. He further admitted that he got out of the car with Mr. Porter the next night and approached the three boys in West Park. He stated he wanted to borrow a phone from one of the boys because his phone was dead. He said he did not know Mr. Porter intended to rob the boys until he pulled out the gun. He said that he told Mr. Porter to "let me use the phone first" before he robbed them. The defendant also discussed an incident that happened shortly after they left West Park and went to Circle K. He said a young man approached them and asked if they knew where he could get some marijuana. They led him to a dead end road, where Mr. Porter took the man's money at gun point. He said he again did not know Mr. Porter intended to rob the man. Finally, he discussed the robbery of Mr. West and Ms. Wisby. When they got back to the convenience store where they had first met the young man looking for marijuana, he said there was a car parked with two people in it. The defendant thought they thought were having some kind of sex. He said he wanted to see, so they got out of the car, but again Mr. Porter pulled a gun. He said he just stood in front of the couple's car and did nothing while Mr. Porter robbed them of their phones. Finally, he admitted that he and Mr. Darden went to Houston, Texas the next day, attempted to sell the iPhone there, and disposed of Mr. Porter's gun—although he did not remember what happened to the gun.

Finally, Joshua Porter took the stand as a witness for the defense. While Mr. Porter's testimony was more coherent than the defendant's statement to the police, he was still evasive and circuitous about the facts of the robberies. He stated that he had pled guilty to three counts of armed robbery with a firearm but had not yet been sentenced. He acknowledged that as a part of his plea agreement he would

receive fifteen years at hard labor on each count to be served concurrently. While he agreed that he initially told the police that the defendant and Mr. Darden conspired with him on all the robberies, he testified he only lied about their participation because he thought if he spread the blame thin enough it would go easier for him. Contrarily, he claimed at trial the two men had no idea what he intended to do in each case. He claimed they never asked him what he was doing because they had all been drinking and intoxicated people do not ask questions. He further explained that he had to persuade the defendant and Mr. Darden to fill up their tanks at the gas station on Mr. Naquin's debit card after the Naquin robbery. He admitted he owned a Taurus tactical 9 mm pistol. He did state that the defendant got out of the car and approached the three men in West Park. In his statement to the police, the defendant had stated that it was he who wanted to borrow one of the men's cell phone in the West Park robbery. However, Mr. Porter testified that when he and the defendant approached the three men in the park, it was to borrow the cell for Mr. Darden, who had remained in the vehicle. He also stated that he planted the iPhone and gun in Mr. Darden's car when he learned they were going to Texas so that no one would find the items.

In brief, the defendant argues that "[b]ecause of the nature of the crimes and the multiple co-defendants, the jury had to make the determination that Mr. Acker was a principal to the crimes at issue in finding him guilty." He further argues that "the state had to prove that Mr. Acker was 'concerned' with the commission of the theft."

**Armed robbery with use of a firearm**

The jury found the defendant guilty to two counts of armed robbery with the use of a firearm. The two counts were the robberies of the three friends in West

10

Park and the couple in the car at the convenience store, committed on May 17, 2011. In brief, the defendant argues that "the state failed to prove that Mr. Acker was a principal in either of these armed robbery [sic] because he lacked the requisite knowledge of Mr. Porter's criminal intent to rob anyone much less use a dangerous weapon." Armed robbery is a general intent crime.

> An offender therefore has the requisite intent when "from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of any subjective desire on his part to have accomplished such result." *State v. Elzie*, 343 So.2d 712, 714 (La.1977); R.S. 14:10. Thus, "in the case of armed robbery, when the proof shows that the perpetrator armed with a dangerous weapon causes another to surrender to him whatever was the object of the robbery, the necessary criminal intent has been furnished by the very doing of those criminal acts." [*State v.*] *Holmes*, 388 So.2d [722 (La.1980)] at 727.

*State v. Smith*, 07-2028, p. 10 (La. 10/20/09), 23 So.3d 291, 298.

In the instant case, the defendant admitted he got out of the car with Mr. Porter and approached both the friends in the park and the couple in the car. While he claimed he did not know that Mr. Porter was going to rob the victims at gun point, he admitted he stood by and said nothing. This was after he claimed he was shocked and very upset the night before when Mr. Porter robbed Mr. Naquin at gun point. The defendant further claims that the state failed to prove that he "knew that his co-defendant was armed with a dangerous weapon at the time of the robbery." Again, this was after Mr. Porter used a gun to rob Mr. Naquin the night before. Furthermore, at trial, Mr. Porter testified that that he carried the gun "98%" of the time and that the defendant knew he generally carried a gun. In *Smith,* the defendant argued that although she and her boyfriend cruised Wal-Mart's parking lot looking for "an easy snatch," she was not aware that he had a hand gun on his

person when he used the gun to snatch a purse out of the victim's shopping basket.

*Id.* at 298. The supreme court noted:

> Some jurisprudential support exists for the position taken by the court of appeal and defendant that defendant must have subscribed to Castro's decision to arm himself before he stepped from the car to render her a principal in the offense of armed robbery. *See State v. Doucet,* 93-1523, p. 6 (La.App. 3rd Cir.5/4/94), 638 So.2d 246, 249 (reducing first degree robbery conviction to simple robbery because "[t]he evidence does not support a conclusion that the defendant knew of the existence of the knife before or during the robbery or that [the co-perpetrator] might lead the victim to believe that he was armed with a dangerous weapon. . . . Additionally, [the co-perpetrator] testified that the defendant was not aware that he had a knife on his person until after the robbery."); *State v. Smith*, 450 So.2d 714, 716-17 (La.App. 4th Cir.1984)(reducing armed robbery conviction to simple robbery because the evidence revealed that the co-perpetrator spontaneously armed himself with a hammer belonging to the victim in the middle of the robbery and used it to intimidate the victim while defendant stood on the other side of the counter urging his accomplice to get all of the money but not mentioning the hammer). Both decisions rely on the general rule that "[a]ll principals to a crime are not necessarily guilty of the same grade of the offense. A principal may be convicted of a higher of [sic] lower degree of the crime, depending upon the mental element proved at trial." *Smith,* 450 So.2d at 717 (citing *State v. Holmes*, 388 So.2d 722 (La.1980)). Thus, under Smith and *Doucet,* the requisite intent of a principal who concerns himself in a robbery by aiding and abetting another in the commission of the offense is the intent to commit either armed or simple robbery, and in the latter case, the intent of the co-perpetrator to arm himself before or during the offense may not be imputed to the principal.
>
> However, neither *Doucet* nor the Fourth Circuit's *Smith*, nor the Second Circuit's decision in the present case for that matter, takes into account a general principle of accessorial liability that when two or more persons embark on a concerted course of action, each person becomes responsible for not only his own acts but also for the acts of the other, including " 'deviations from the common plan which are the foreseeable consequences of carrying out the plan.' " *State v. Smith*, 98-2078, p. 7 (La.10/29/99), 748 So.2d 1139, 1143 (quoting 2 Wayne R. LaFave and Austin Scott, Substantive Criminal Law, § 7.5, p. 212 (1986)).

*Id*. at 296.

In *State v. Scroggins*, 40,746 (La.App. 2 Cir. 3/22/06), 926 So.2d 64, *writ denied*, 06-980 (La. 11/3/06), 940 So.2d 655, the defendant and three other men

drove around town looking for a car to steal. At one point, they spotted a woman in an SUV and followed her to where she parked at an apartment complex. While the defendant sat in the back seat of the vehicle, two of the men got out of the car and put a gun to the victim's head. At this point, the defendant exited the car and left the scene. Later, he met up with the two men and was told that they had raped and murdered the woman. The defendant found her credit cards in the back seat of the car and used the cards to withdraw money. The defendant was later convicted of armed robbery. He argued on appeal, however, that the state failed to connect him with the crime other than placing him in the car that "brought the co-defendants to their victim." *Id.* at 65. The second circuit found that the evidence was sufficient, noting:

> Scroggins' involvement with this group was from 7:30 p.m. until the wee hours of the next morning. The group made several stops along the way before it accomplished what this defendant knew it had clearly set out to do—"hit a lick." A person who did not want to be involved in an armed robbery would not have continued to get back into the vehicle with a group of men who were specifically looking for a victim to rob. Since the group of men made so many stops during the course of the evening, Scroggins had several chances to leave the group. The incriminating evidence is derived only from Scroggins' admission to his actions that evening and does not include a confession of any culpability. However, his intent to participate in this crime can be inferred from his actions of staying with the men after he knew their plans and knew they were armed, as well as his action of waiting on Aaron and Monster to return to Fat's house. The evidence supports a finding that the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.

*Id.* at 69.

The second circuit in *Scroggins* also noted the holding in *State v. Bates*, 495 So.2d 1262 (La.1986), *cert. denied*, 481 U.S. 1042, 107 S.Ct. 1986 (1987), wherein the defendant's role in the armed robbery was not clearly evident from the facts.

13

However, the supreme court in *Bates* determined that the defendant's behavior indicated he was a principal to the robbery. Ultimately, Bates was convicted of first degree murder. However, on appeal, he argued that the evidence was not sufficient to support a finding that the murder of the victim was committed while he was engaged in the perpetration of the armed robbery. The supreme court stated:

> All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. R.S. 14:24. Defendant was present at the time of the robbery, either outside the car and immediately beside Clark and Shirley, or seated inside the car when Shirley used the gun and fired warning shots at Clark. He was certainly present at all times during the robbery but did nothing and said nothing to prevent the robbery. He accepted the clothes of the victim from Shirley and went through the wallet. Items from the victim's wallet were later found in Bates' wallet and Clark's wallet was found in the defendant's possession when he was arrested. He therefore shared in the proceeds of the robbery. The robbery occurred with the use of Bates' gun and his car. It is true there is no evidence that Bates and Shirley planned the robbery in advance. Nor did anyone testify Bates held the gun on Clark during the first confrontation on the bridge or that he threatened Clark at that time or forced the removal of his wallet or clothing. Nevertheless, we find ample evidence to conclude Bates was a principal to the robbery of Clark. This court has affirmed an armed robbery conviction under similar facts in *State v. Gutter*, 393 So.2d 700 (La.1981).

*Id*. at 1269.

In the current case, the defendant's actions indicate that he was aware of Mr. Porter's intent to rob people. Although the defendant argues that after the first robbery on May 16th, he was so distraught that he had nothing to do with Mr. Porter for a few days, the facts in the case show that the very next day, on May 17th, he, Mr. Darden, and Mr. Porter were again on the road.

As for the couple at the convenience store, this incident occurred right after two previous robberies wherein Mr. Porter also brandished a gun. Although the

14

defendant stated that he was shocked and dismayed again by Mr. Porter's actions, he never left his company.

The evidence was sufficient in this case for the jury to determine that the defendant's "concern" in the robberies was sufficient to find him guilty of the offenses of armed robbery with the use of a firearm. The jury heard testimony of the victims, the defendant's statement to the police, and Mr. Porter's testimony.

> The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review.

*State v. Arnold*, 07-362, p. 10 (La.App. 1 Cir. 9/19/07), 970 So.2d 1067, 1073, *writ denied*, 07-2088 (La. 3/7/08), 977 So.2d 904.

## First degree robbery

The jury found the defendant guilty of first degree robbery on count one, which was the May 16th robbery of Mr. Naquin. To find the defendant guilty of first degree robbery, the jury had to find, in this case, that Mr. Naquin reasonably believed that Porter was armed with a dangerous weapon. The defendant argues that not only did he not know Mr. Porter was going to rob Mr. Naquin, he did not even get out of the Envoy.

The facts in this case were such that if the jury concluded that the defendant did not get out of the car but was acting as the get-away driver, the jury could have found the defendant guilty as a principal to armed robbery. However, the jury found the defendant guilty of a legislatively approved responsive verdict to armed robbery, first degree robbery. La.Code Crim.P. art. 814(A)(22). A jury may return a legislatively provided responsive verdict, "whether or not the evidence supports

15

the verdict, as long as the evidence was sufficient to support a conviction of the charged offense" absent a contemporaneous objection. *State ex rel. Elaire v. Blackburn*, 424 So.2d 246, 249 (La.1982), *cert. denied,* 461 U.S. 959, 103 S.Ct. 2432 (1983). The defendant never objected to the legislatively authorized responsive verdict of first degree robbery.

In his statement to the police, the defendant indicated he did not get out of the car when Mr. Porter robbed Mr. Naquin at gun point. Furthermore, Mr. Porter testified it was Mr. Darden who accompanied him when he approached Mr. Naquin and demanded money. The evidence was sufficient in this case to have found the defendant a principal to armed robbery. However, it appears the jury chose to find the defendant guilty of a lesser included offense of first degree robbery, perhaps because there was corroborating testimony that the defendant did not exit the car. This was the jury's prerogative.

There is no merit with this assignment of error.

## ASSIGNMENT OF ERROR NUMBER TWO

The defendant argues that the trial court erred by allowing the admission of his statement made to the police because the statement contained references to other crimes evidence in violation of La.Code Evid. art. 404(B)(1).

Article 404(B)(1) provides:

> Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

Initially, the defendant contends there was no pretrial hearing concerning the admission of other crimes evidence. Secondly, he argues that while the trial court did rule on the issue in open court, there was no transcript provided in the record regarding the ruling other than what was noted in the minute entry for that date. However, in this case, a transcript of the trial court's ruling has been provided to the defendant, the state, and this court as a result of a request for supplementation of the record filed by the defendant.

The other "crime" evidence objected to was originally count three listed in the bill of information filed on July 6, 2011, which read:

> On or about May 17, 2011, DARRELL K. DARDEN, JR., RONALD G. ACKER, JR. and JOSHUA L. PORTER, did willfully and unlawfully violate R.S. 14:64 and R.S. 14:64.3, Armed Robbery, Use of Firearm, by taking money and a cell phone from the person of Michael Tansy, by the use of force and intimidation while armed with a dangerous weapon, to wit: a Taurus MM semi-automatic pistol, a firearm, (a felony)[.]

On May 17, 2012, four days prior to trial, the state amended the bill of information to eliminate the above count and sever co-defendants, all without objection. On May 21, 2012, prior to the jury being sworn, counsel for the defense objected to a DVD and transcript of the interview with the defendant being admitted into evidence for the reason that the incident alleged in the original count three was dismissed. According to the minute entry, the trial court heard argument and then stated it would rule on the issue later in the day. The jury was sworn in at 1:30 p.m. At 2:00 p.m. outside the presence of the jury, the trial court made its ruling, in pertinent part, as follows:

> First of all, there was not a prior notice and a prior notice is not required in every case. And specifically in this case there was neither a prior notice nor was there a motion in limini [sic] by either party addressing this but only the verbal statements made on the record.

17

In this case in review of the count that was previously billed against Mr. Acker which is no longer contained therein, the Court does find that the notice apprehende [sic] of all described offenses that he is charged with are so peculiarly distinctive as to make it a logical conclusion that they were the work of the same person including this particular count which would now qualify as other crimes evidence.

. . . .

The law now talks about integral part of the crime as opposed to the legal term, res gestae; is this an integral part of the crime. And if it is determined to be an integral part or the res gestae of the crime then no notice is required. And in this particular situation there was knowledge of it given to the defendant both through discovery as well as the original bill.

So the Court at this time finds that this evidence, these acts can be introduced because it relates to the conduct that constitutes an integral part of this act or transaction which is subject of the current proceeding.

On May 17, 2011, the defendant and his cohorts committed robbery with the use of a firearm on three separate occasions. In each case, they took the victims' cell phones and whatever money they could get. These robberies took place within a three to four hour period. The complained of other crime evidence was the second of the robberies. The defendant participated in a crime spree. In *State v. Taylor,* 01-1638, pp. 10-13 (La. 1/14/03), 838 So.2d 729, 741-43, *cert. denied*, 540 U.S. 1103, 124 S.Ct. 1036 (2004), the supreme court discussed at length the admissibility of a seven-day crime spree, which involved dozens of crimes through several states, when it related to conduct formerly known as *res gestae*, as follows:

Generally, courts may not admit evidence of other crimes to show defendant is a man of bad character who has acted in conformity with his bad character. However, under La. C.E. art. 404(B)(1) evidence of other crimes, wrongs or acts may be introduced when it relates to conduct, formerly referred to as *res gestae*, that "constitutes an integral part of the act or transaction that is the subject of the present proceeding." *Res gestae* events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the state could not accurately present its case without reference to them. A close proximity in time and location is

18

required between the charged offense and the other crimes evidence "to insure that 'the purpose served by admission of other crimes evidence is not to depict defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.'" *State v. Colomb*, 98-2813, p. 3 (La.10/1/99), 747 So.2d 1074, 1076 (quoting *State v. Haarala*, 398 So.2d 1093, 1098 (La.1981)). The *res gestae* doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime if a continuous chain of events is evident under the circumstances. *State v. Huizar*, 414 So.2d 741, 748 (La.1982); *State v. Kimble*, 407 So.2d 693, 698 (La.1981). In addition, as this court recently observed, integral act (*res gestae* ) evidence in Louisiana incorporates a rule of narrative completeness without which the state's case would lose its "narrative momentum and cohesiveness, 'with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.'" *Colomb*, 747 So.2d at 1076 (quoting *Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997).

> . . . .

However, under the rule of narrative completeness incorporated in the *res gestae* doctrine "the prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault." *Old Chief*, 519 U.S. at 188, 117 S.Ct. 644.

There was no error in the trial court's ruling on this issue. The defendant, however, further argues:

> This issue becomes even more confusing during the trial at the point where the jury is to view the transcript of the defendant's statement. At that time, the Court notes "before we hand out the transcript of the statement, I need to inform the jury that this statement from time to time has maybe a blank page or blank area or comment. The reason for that is, of course, prior today's date there were some procedural issues that were covered, and there are certain things that are not allowed to be presented in the transcript, so there's nothing you should infer from that in any way.

> This entire exchange is absent from the transcript of the trial which begins in the record at page 613. Although page 617 outlines the actions in the trial court prior to the calling of the first witness, no

mention is made of any pretrial hearing or arguments on this issue. We would also note that the defense motion for appeal and designation of the record (Record 559) designated the "entire transcript of each hearing herein". A criminal defendant has a right to complete transcript of the trial proceedings, particularly when counsel on appeal was not counsel at trial (as in the case sub judice). **State vs. Landry,** 97-0499 (La. 06/29/99)[,] 751 So.2d 214.

There was no confusion to the jury regarding the defendant's transcribed interview. Furthermore, there is no confusion with this court. The defendant is correct in his assertion that the trial transcript for the day he raised the question of whether the crime alleged in the original bill of information was inadmissible "other crimes evidence" is not in the record before this court. The objection to the admission of the interview was raised on May 22, 2011, at the conclusion of *voir dire*, which is also not in the record. Although the exclusion of this portion of the transcript is an error, we find it is a harmless error. The defendant's argument can be clearly discerned, both from the minute entry and from the transcript of the trial court's ruling, wherein the defendant did have an opportunity to state his position. The trial court had retired and taken the matter under advisement. Two hours later, the trial court returned with a ruling on the issue of the offense alleged in the original count three and had concurrently redacted other irrelevant information from the interview that was prejudicial to the defendant.

There is no merit to this argument.

### ASSIGNMENT OF ERROR NUMBER THREE

The defendant complains of objections that were made and argued to the trial court outside the presence of the jury that were recorded but not transcribed. Specifically, the defendant refers to objections made in the record at pages 730, 784, 786, 789, and 801. However, these portions of the record have been supplied to the defendant, the state, and this court as a result of a request for

20

supplementation of the record filed by the defendant. The defendant alleges no error otherwise.   This assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER FOUR

The defendant argues that the word "principal" repeatedly used during jury instructions "unduly focused the jurors on that aspect of the state's case and confused the issues with regard to the elements of the crime that the state had to prove beyond a reasonable doubt." While discussing the jury instructions to be given, defense counsel objected to the use of the word "principal" being used each time the trial court would tell the jury "what elements must be proven[.]" The defendant notes that the word "principal" was used six times during the reading of the definition of the word and the applicable law concerning principals and four times when the trial court discussed the elements of armed robbery.

The trial court used the words "perpetrator or" each time the word "principal" was used when reading the definitions of robbery and robbery with the use of a firearm. Considering that the defendant's defense was that although he was present during the robberies, he was unaware of Mr. Porter's intentions or that he carried a firearm, the words used were necessary instructions to the jury. Moreover, the defendant does not show in what way or manner the repeated use of the word was confusing to the jury or prejudicial to the defendant.   There is no merit to this assignment.

## ASSIGNMENT OF ERROR NUMBER FIVE

At trial, the defendant objected to the publication of a photograph of the three co-defendants.  He argues the picture was not relevant and the only purpose the state had for giving the picture to the jury was to alienate the jury against him by showing him in a bad light.   The defendant argues that had the three co-

defendants been wearing suits or football uniforms, the state would not have shown it to the jury. Louisiana Code of Evidence Article 401 provides that "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The picture was relevant in this case. Each victim could not identify the robbers because their faces were covered. However, each of the victims' described their assailants' heights as a means of identifying which of the co-defendants were robbing them, which one had the gun, and which co-defendant remained in the Envoy. Ms. Wisby testified that the tallest of the three men appeared to be the boss of the group, and Mr. West testified that the shortest one held the gun. The picture shows three young men, dressed in jeans and t-shirts, standing shoulder to shoulder. The picture also shows the range of their respective heights with Mr. Porter being the tallest of the three and Mr. Darden the shortest. Louisiana Code of Evidence Article 403 provides that relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time."

The defendant has failed to show how the probative value of the picture was outweighed by the danger of prejudice or that the picture caused confusion at trial or misled the jury. There is no merit to this assignment of error.

## ASSIGNMENT OF ERROR NUMBER SIX

The defendant contends his sentence of fifteen years at hard labor without the benefit of parole, probation, or suspension of sentence imposed on the conviction for first degree robbery is excessive under the circumstances of his case. The defendant does not complain of the excessiveness of the fifteen year sentences imposed on the two convictions for armed robbery with use of a firearm.

Louisiana Revised Statutes 14:64.1 provides that "[w]hoever commits the crime of first degree robbery shall be imprisoned at hard labor for not less than three years and for not more than forty years, without benefit of parole, probation or suspension of imposition or execution of sentence." The defendant received less than one half of the sentence he could have received.

This court has previously discussed the standard for reviewing excessive sentence claims:

> [Louisiana Constitution Article] I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling,* 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied,* 01-838 (La. 2/1/02), 808 So.2d 331 (citations omitted).

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. While a comparison of sentences imposed for similar crimes

23

may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case."

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061 (citations omitted).

Initially, we note that the defendant did not object to the sentences following imposition. Neither did the defendant file a motion to reconsider the sentences. Failure to file a motion to reconsider the sentence generally precludes a defendant from complaining about the excessiveness of a sentence on appeal. La.Code Crim.P. art. 881.1(E). *See also State v. Williams*, 01-998 (La.App. 3 Cir. 2/6/02), 815 So.2d 908, *writ denied*, 02-578 (La. 1/31/03), 836 So.2d 59. However, this court has reviewed claims of excessiveness where no objection was made and no motion to reconsider sentence filed. *See, e.g., State v. Johnlouis*, 09-235 (La.App. 3 Cir. 11/4/09), 22 So.3d 1150, *writ denied*, 10-97 (La. 6/25/10), 38 So.3d 336, *cert. denied*, __ U.S. __, 131 S.Ct. 932 (2011). Accordingly, we will review the defendant's claim as a bare claim of excessiveness.

At the sentencing hearing, the trial court noted:

While you were found less culpable in count one than your counterpart, Mr. Porter, who entered into a plea agreement, the Court still considers this series of criminal activities to be, all the same, part of the same plan; and I intend to impose the same sentence.

It is with difficulty I come to that, because I now regret agreeing to the 15 years on Mr. Porter. But I think that since the district attorney entered into that agreement and thought that that was enough, considering all the pain and fear that you put these victims through, that it could have been more than that. But based on the fact that you were found less culpable slightly than Mr. Porter, I see no reason why you should not be sentenced to the same sentence.

24

And, therefore, at this time, on each count, one, two, and three, you are sentenced to serve 15 years on each count, concurrent one with the other, with the Department of Corrections, at hard labor, which the entirety of this sentence is without benefit of parole, probation, or suspension of sentence.

In *State v. Bourg*, 09-1291 (La.App. 3 Cir. 6/30/10), 42 So.3d 1079, *writ denied*, 10-1702 (La. 2/4/11), 56 So.3d 990, this court did not find a fifteen year sentence imposed on a conviction for first degree robbery to be excessive. The defendant had been charged with armed robbery but convicted of first degree robbery. This court noted that the defendant had an extensive prior criminal history, unlike in the current case. However, this court also noted a fifth circuit case wherein the defendant was a first time felony offender and received eighteen years for the offense of first degree robbery. *See State v. Washington*, 05-210 (La.App. 5 Cir. 10/12/05), 917 So.2d 488. In *Washington*, there was no proof the defendant had a weapon during the robbery, he had a history of mild mental retardation, and the victim was never physically harmed or even touched during the robbery.

We do not find the trial court abused its considerable discretion when it sentenced the defendant to fifteen years at hard labor for the offense of first degree robbery considering the circumstances of the case.

## CONCLUSION

We hereby affirm the two convictions for armed robbery with use of a firearm and the conviction for first degree robbery. We also affirm the sentence of fifteen years at hard labor imposed on the conviction for first degree robbery. However, we hereby vacate the defendant's sentences for armed robbery with use of a firearm and remand the case for resentencing in accordance with La.R.S.

25

14:64 and 14:64.3. The trial court is instructed to specify the portion of the sentences enhanced pursuant to La.R.S. 14:64.3.

**CONVICTIONS AFFIRMED; SENTENCE FOR FIRST DEGREE ROBBERY AFFIRMED; SENTENCES FOR ARMED ROBBERY VACATED; REMANDED FOR RESENTENCING.**